PASS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. April 7, 1919.)

No. 3242.

1. CRIMINAL LAW ⬤⇒406(2)—EVIDENCE—ADMISSIONS WHILE IN CUSTODY.

In a prosecution for having violated the Selective Service Law (Comp. St. 1918, §§ 2044a–2044k), testimony of a secret service agent as to admissions made by defendant after his arrest *held* admissible; there being no evidence of any substantial character tending to show force or threats against defendant or inducement offered him by government agents.

2. CRIMINAL LAW ⬤⇒371(1)—EVIDENCE—OTHER OFFENSES—LEAFLET CIRCULATED BY DEFENDANT—GOOD FAITH.

In a prosecution for violation of the Selective Service Law (Comp. St. 1918, §§ 2044a–2044k), where defendant testified that he acted in good faith in registering at a place other than his alleged permanent home, a leaflet advocating resistance to conscription was admissible, where there was evidence to show that defendant was one of those directly responsible for its publication.

3. ARMY AND NAVY ⬤⇒20—SELECTIVE SERVICE LAW—REGISTRATION OTHER THAN AT DOMICILE—EVASION OF SERVICE—QUESTION FOR JURY.

In a prosecution for violating the Selective Service Law (Comp. St. 1918, §§ 2044a–2044k), whether defendant, domiciled with his parents in Seattle, Wash., by registering with a local draft board in Idaho while on his way to New York to study, had intended to evade military duty, *held* for the jury under the evidence.

4. ARMY AND NAVY ⬤⇒20—SELECTIVE SERVICE LAW—EVASION—INSTRUCTION.

In a prosecution for violating the Selective Service Law (Comp. St. 1918, §§ 2044a–2044k), instruction *held* fairly to present the main issue whether defendant, domiciled with his parents in Seattle, Wash., intended to evade military service when he registered with a local board in Idaho while on his way to New York to study.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Morris Pass was convicted of having violated the Selective Service Law, and he brings error. Affirmed.

Winter S. Martin and Wilson R. Gay, both of Seattle, Wash., for plaintiff in error.

Clarence L. Reames, Sp. Asst. Atty. Gen., Robert C. Saunders, U. S. Atty., and Ben L. Moore, Asst. U. S. Atty., all of Seattle, Wash.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Morris Pass was convicted of having violated sections 5 and 6 of the Selective Service Law, approved May 18, 1917 (40 Stat. 76, c. 15 [Comp. St. 1918, §§ 2044a, 2044k]), in that he willfully failed and refused to present himself for registration at Seattle, his permanent home and actual place of registration, and to submit to registration, on June 5, 1917.

The evidence showed these facts: Pass was 23 years old at the time of the trial in February, 1918, was an unnaturalized alien, born in Russia, and in 1904 came to the United States with his parents. The

family landed at New York and went directly to Columbus, Ohio, where they stayed one year. In 1905 they moved to Cleveland, where they remained until 1913, when the father went to Seattle, Wash., and at the end of a year defendant, together with the rest of the family, joined the father in Seattle. Morris remained in Seattle 7 or 8 months, and then went to New York to study painting, and stayed there about 1 year and 3 months, or until September, 1916, when he returned to Seattle, where he remained with his parents until the latter part of May, 1917.

At that time he and his brother, Joe Pass, left Seattle for New York, and worked their way from place to place. Defendant reached Sand Point, Idaho, on the evening of June 4th or morning of June 5th. He testified that he conferred with the local board of registration at Sand Point and was advised to register there, and that he did so, under the name of Morris Levine; that he left Sand Point on the afternoon of June 5th and went to Montana, going from there to New York, arriving about the middle of September, 1917; that in New York he lived at 16 Christopher street, under the name of Morris Pass, but received his mail at the general delivery; that he remained at Christopher street for about 3 weeks, or until October 13th, when he was arrested; that he did not consider New York as his permanent residence, but merely a place where he would study, and that after leaving Seattle he had not established a permanent residence; that he considered his residence wherever he was, where he slept and was doing his business. "I registered in Sand Point, because I did not consider Seattle my place of residence. I considered myself a migratory worker, which I was."

[1] It is contended that the court erred in permitting a witness to testify to certain admissions made by defendant when in New York. The witness was a United States secret service agent, who met Morris Pass in June, 1917. Counsel for the government asked the witness whether he had heard the defendant make any statement with reference to his registering or failing to register under the Selective Service Act. Counsel for the defendant was given permission to interrogate the witness as to the circumstances under which any admissions or statements were made. The evidence given was to the effect that Pass, after his arrest, stated that he had resided in Seattle; that he had remained there until May, 1917; that he had not registered at any place, and was somewhere in Montana on June 5, 1917; and that he was a conscientious objector. There was no evidence of any substantial character which tended to show force or threats against Pass, or inducement made or offered to him by the agents of the government. The mere fact that Pass was in custody when he made the statements, and that they were answers to questions put by the agents, did not make such admissions involuntary. In Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568, cited by defendant, the facts were very different. There the accused was in actual custody, was stripped of his clothing, and was nagged and told by the detectives that an eyewitness charged him with guilt, and that if he had an accomplice he should say so, and not have the blame of the "horrible

crime" on his own shoulders. In Hopt v. Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262, the court, in discussing the admissibility of a confession, said:

"The admissibility of such evidence so largely depends upon the special circumstances connected with the confession that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. As the question is necessarily addressed, in the first instance, to the judge, and since his discretion must be controlled by all the attendant circumstances, the courts have wisely forborne to mark with absolute precision the limits of admission and exclusion." Sparf v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343.

[2] It is said that the court erroneously admitted an exhibit and circular headed, "No Conscription! No Involuntary Servitude! No Slavery!" published on or after May 11, 1917. The circular, after setting forth that slavery was not permitted in the United States, went on:

" * * * Wake up! Stand by us now, for when we have become an army we will have ceased to think, and we will shoot you if told to shoot you. * * * Resist! Refuse! Don't yield the first step toward conscription. Better be imprisoned than to renounce your freedom of conscience. Let the financiers do their own collecting. Seek out those who are subject to the first draft. Tell them that we are refusing to register or to be conscripted, and to stand with us like men and say to the masters: 'Thou shalt not Prussianize America!' "

Below the main printing were the words, "Seattle Branch No Conscription League, P. O. Box 225."

It is doubtful whether exception was taken to the admission of the circular in evidence; but, assuming that the point was saved, there is no merit in it, for the reason that there was evidence which tended to show that Morris Pass was one of those directly responsible for the publication of the leaflet. We quote part of the cross-examination of defendant (Transcript, p. 54):

"Q. Where have you seen it prior to that time? A. Prior to that time I had seen it, I believe, on the streets in Seattle; also one on the porch at our house.

"Q. On the porch at your house? A. Yes sir.

"Q. I will ask you if you did not pay for the printing of that circular? A. No, sir.

"Q. Isn't it a fact that you gave to Hulet M. Wells a sum of money to pay for the printing of this leaflet? A. I didn't pay for them.

"Q. Did you give to Hulet M. Wells money to pay for the printing of this leaflet? A. The money was taken at a collection to pay for this leaflet.

"Q. Who collected that? A. The money was put on a table at a meeting which would pay for that leaflet.

"Q. And who took the money from the table? A. Part of it was taken by Mr. Wells; part of it I taken and gave to Mr. Wells later.

"Q. That was for the publication of this leaflet? A. Yes, sir."

Inasmuch as defendant testified that he acted in good faith in registering at Sand Point, Idaho, there was no error in admitting the circular as tending to negative his evidence of good faith. Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996.

[3, 4] It is contended that there was no evidence to support the verdict of the jury. By the provisions of the Selective Service Law,

and under the executive proclamations and regulations prescribed under the authority thereof, registration was required on June 5, 1917, of every male person who on that date or theretofore should have attained his twenty-first birthday, and who on said date should not have attained his thirty-first birthday, registration to be made at the registration place in the precinct wherein the registrant had his permanent home and orders. The law provided for the benefit of registrants that—

"Those who expect to be absent on the day named from the counties in which they have their permanent home may register by mail, but their mailed registered card must reach the places in which they have their permanent home by the day named herein, June 5, 1917." Proclamation of the President of the United States, dated May 18, 1917.

There was evidence going to show that defendant had a permanent home and domicile in the city of Seattle on June 5, 1917, and that he had not abandoned it on that date. If, when he was at Sand Point, Idaho, on the night of June 4th or morning of June 5th, he had a plan to move on and migrate through other towns to his ultimate destination, New York, such a floating intention would not conflict with a domicile in Seattle. There is nothing to show that he had established a new residence in Sand Point; on the contrary, it is clear that he intended to move on to New York. The question was one for submission to the jury. The court fully explained the requirements of the law, and among other instructions said:

" * * * He was in Sand Point on the 5th day of June, and registered, not in his own name, known at his place of domicile, but under the name of Morris Levine, or Levene, stating that he had assumed the name as his traveling cognomen. * * * Now, you are instructed that the regulations further provide that when a man is absent from his domicile or permanent residence—actual residence—that he may register by mailing his registration to the registration board of his domiciliary precinct. The law makes it an offense to willfully fail to register. * * * So, on the morning of the 5th day of June and before, after issuance of the rules and regulations and after the passage of the law, he knew that he could register by presenting himself at the voting precinct within which his domicile is situated, and, if he was absent then, by mailing his registration to his precinct.

"Now the issue for you to determine is raised by this registration in Sand Point, Idaho. I have admitted in evidence the fact of his registration there, and all of the circumstances bearing upon his conduct and his intent which brought about that registration, for the purpose of permitting you to fairly consider all of the evidence that is before you to determine whether this defendant acted honestly at that time, and with an honest purpose and intent of complying with the law, whether his conduct at that time was with the purpose of perpetrating a fraud upon this act and the government, and with a view to evasion, so that he might not be called, or evade the call if he is certified, if his name is called, and still, if discovered, then have some thread upon which to predicate the idea of intention of faithful compliance with the law."

By this instruction the main issue was fairly presented, and after careful consideration of the whole record we are satisfied that defendant's rights were in no way prejudiced.

The judgment is affirmed.