## PASS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. April 7, 1919.)

### No. 3243.

ARMY AND NAVY ⬤⟿20—SELECTIVE SERVICE LAW—REGISTRATION IN CITY OF DOMICILE.

A resident of Seattle, Wash., where his parents lived, in so far as he had any domicile, who left his wife in the city and started to work his way to New York to study, by failing to register in Seattle under the Selective Service Law (Comp. St. 1918, §§ 2044a–2044k), violated such law, though he registered at a point in Idaho, and, if his failure to register in Seattle or his evasion of the requirements of the law was willful, he could be convicted.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Joseph Pass was convicted of having violated the Selective Service Law, and he brings error. Affirmed.

Winter S. Martin and Wilson R. Gay, both of Seattle, Wash., for plaintiff in error.

Clarence L. Reames, Sp. Asst. Atty. Gen., Robert C. Saunders, U. S. Atty., and Ben L. Moore, Asst. U. S. Atty., all of Seattle, Wash.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. By writ of error Joseph Pass asks reversal of a judgment of conviction under two counts of an indictment for having violated the Selective Service Law of May 18, 1917 (40 Stat. 76, c. 15 [Comp. St. 1918, §§ 2044a–2044k]). The first count charged that he willfully failed and refused to present himself for registration at precinct No. 201, Seattle, on June 5, 1917, "that precinct then being the precinct wherein said Joe Pass then had his permanent home and actual place of legal residence, from which he was not then temporarily absent." By the second count Pass was charged with having willfully evaded the requirements of the Selective Service Law, in that he willfully and knowingly failed to present himself for registration. The defendant is a brother of Morris Pass, whose case we have heretofore decided. Pass v. United States, 256 Fed. 731, —— C. C. A. ——.

The uncontradicted evidence was that Pass, who was 24 years old, was born in Russia and came to the United States with his father about 1904. He lived in Columbus, Ohio, for a year, and then in Cleveland, Ohio, for about 6 years. Pass then went to Seattle, where, in a few months, he was joined by his father's family. After living 5 or 6 months with his parents in Seattle, he went to Alaska, where he remained a little more than 3 years. He then went back to Seattle, where he again lived with his parents for 3 years. In 1915 he lived with a brother on Twelfth avenue, Seattle. In 1916 he lived with his parents at Fifteenth avenue, Seattle, and he continued to live there

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

until May 31, 1917, when he was married. At the time of his marriage he gave his home as Cleveland, Ohio, although he had not lived there for more than 6 years before his wedding. On May 31st, with his brother Morris, he left Seattle with the plan of working their way to New York. The defendant's wife remained at Seattle. On the night of June 4, 1917, or the morning of June 5, they reached Sand Point, Idaho, and, according to defendant's testimony, after some conversation with the registration officials at Sand Point, and telling them that he had come from Seattle, but did not live in Idaho, and was going to New York, he registered at Sand Point under the name of Joe Levine. He left Sand Point for Montana on the afternoon of June 5th, and his testimony is that he did not live in the county where Sand Point, Idaho, is situated; that he lived at 16 Christopher street, in New York, but that he got his mail at the general delivery; that his purpose in going to New York was to study; that before he left Seattle he made no inquiries about registering, and did not know that he could register by mail; that he took the name Levine because of the manner in which he and his brother were traveling; they did not "look clean enough, and did not care to use the name of Pass"; that, although he was living with his parents in Seattle in 1917, he did not call it his residence or expect to live there; that when he was married he gave Cleveland as his home, "because he had lived there the longest since he had been in this country." Defendant said that he was opposed to the Draft Act.

The question presented is whether the District Court erred in charging the jury that upon the facts "as a matter of law the defendant had not established a domicile in Sand Point, Idaho," and that "the domicile of the defendant continued on the 5th day of June at Seattle and had not been changed," but that it was for the jury to determine whether, considering the conduct of defendant and all the circumstances before and after the registration, he willfully failed to register at the place of his domicile, or willfully evaded the registration law by his act in registering at Sand Point, Idaho; that if the jury believed Pass acted honestly and with bona fide intention of complying with the law, rather than willfully to fail to comply with it or evade its provisions, or if there was a reasonable doubt upon the point, he should be acquitted.

It is not controverted that by the terms of the law and under the proclamation of the President, dated May 18, 1917, the date of registration was fixed for June 5, 1917, and the place of registration for each person was in the precinct wherein such person had his permanent home, or that it was provided that "those who expect to be absent on the day named from the counties in which they have their permanent homes may register by mail, but their mailed registration cards must reach the place in which they have their permanent homes by the day named herein," which was June 5th. But defendant failed to register in person in the precinct in which he was living when he was in Seattle and failed to register therein by mail. His counsel, while admitting that the act and regulations "seem to contemplate that every man will have a permanent domicile," argue that there is a

fault in the law, in that there is "no account of the floater or migratory worker," who "resides where he is, whether his stay be long or short." The error of this position is in ignoring the established fact that when defendant left Seattle he resided there, and that there is no showing that he acquired any other residence or home, or that when in Sand Point he had any purpose other than to stop over temporarily and work his way along, so as to reach New York about September, there to remain to study for a time. He left his wife in Seattle, and his parents were there. In Mitchell v. United States, 88 U. S. (21 Wall.) 350, 22 L. Ed. 584, the Supreme Court followed the usual rule that a domicile once acquired is presumed to continue until it is shown to have been changed, and said:

> "Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile, two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject."

Merely calling himself a migratory worker, or saying that he had an indefinite plan to leave Seattle, would not change the fact that defendant had his domicile in Seattle. He surely could not claim Cleveland at his domicile, for he does not show that he had even a floating intention of going there, and there is no proof of any domicile other than Seattle. Gilbert v. David, 235 U. S. 561, 35 Sup. Ct. 164, 59 L. Ed. 360.

Our conclusion is that the District Court was correct in its statement of the legal status of defendant, and in defining the issues upon which the jury were to deliberate.

Affirmed.