## MARTIN v. UNITED STATES.

### No. 5703.

Circuit Court of Appeals, Fourth Circuit.
Jan. 28, 1948.

Thomas H. Stone, of Richmond, Va., for appellant.

Carl F. Pattavina, Atty., Dept. of Justice, Washington, D. C. (George R. Humrickhouse, U. S. Atty., of Richmond, Va., and Golden N. Dagger, Atty., Dept. of Justice, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a conviction and sentence in a criminal case in which the defendant was charged with corruptly endeavoring to influence a juror in violation of section 241 Title 18 of the United States Code Annotated. Four questions are presented for our consideration: (1) whether there was error in denying motions to quash the indictment and discharge the trial panel on the ground that women were not drawn for jury service in the District Court in which the trial was held; (2) whether the evidence was sufficient to sustain the charge; (3) whether there was error in admitting in evidence a statement of defendant in which he, in effect, admitted his guilt of the crime charged; and (4) whether there was error in refusing a requested charge on knowledge and corrupt intent. We think it entirely clear that all of these questions must be answered against defendant.

With respect to the service of women on juries, there is nothing in the Constitution, or at present in the statutes of the United States, which requires that women be drawn for jury service, although this is provided in highly desirable legislation now pending before Congress. The existing statute provides that jurors in the courts of the United States shall have the same qualifications as jurors of the highest court of law in the state. Judicial Code, §

275, 28 U.S.C.A. § 411. The statute of Virginia prescribing the qualifications of jurors limits those eligible to "male citizens over twenty-one years of age". Virginia Code of 1942, sec. 5984. Because of the limitation of this statute, women are not drawn to serve on juries in Virginia in either the state or federal courts; and to sustain appellant's contention would require, not only that the mandate of the federal statute adopting the state statute as to qualification of jurors be ignored, but also that every conviction had in the federal courts of Virginia for at least the past quarter century be nullified.

Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261 does not support defendant's contention. That case arose in the State of California, under the laws of which women are eligible for jury service. What was held improper there was the exclusion from jury service of a class of persons eligible under the law of the state. This was as much a violation of the federal statute as it would be here to include those not eligible.

■ As to the sufficiency of the evidence, the proof against defendant consisted of the testimony of one of the jurors who served in the United States District Court in the trial of the case of United States v. Rakes et al., 74 F.Supp. 645, and a statement made to a federal investigator by the defendant himself. The juror testified that, as the result of a telephone conversation, he met defendant at an automobile service station, and that defendant, after mentioning the fact that the juror was serving in the Rakes case, said that the juror could make some easy money if he would "hang that jury with another juryman". In the statement made to the investigator defendant said that a lawyer of his acquaintance had approached him and, after ascertaining that he knew the juror, stated that Rakes had a lot of money to spend on the case and that the lawyer would like for defendant to arrange with the juror for the lawyer to have a conversation with him; that defendant thereupon called the juror over the telephone and arranged to meet him; that at the meeting he told the juror that a man had come to him and told him that the jury was definitely going to be hung and that Rakes had a lot of money to spend; that

defendant believed he told the juror at this point that the juror could make some easy money; and that the conversation ended because the juror refused to discuss the matter further. If this evidence does not establish a brazen and outrageous attempt to corrupt and bribe a juror in violation of the statute, it is hard to imagine what would be necessary to do so. It failed of its purpose, not because of any innocent intent or lack of knowledge on the part of the defendant, but because of the honesty of the juror. It certainly constituted a corrupt endeavor to influence a juror within the meaning of the statute; and this was all that was necessary to render the accused guilty of the crime charged.

■ Defendant's statement was properly admitted in evidence. He was not under arrest and no threats were made or promises held out to him. The facts are that, upon request of the federal investigator, defendant went voluntarily to the latter's office. Arrived there, he at first stated that he knew nothing about the matter under investigation, but, upon being told by the investigator that the juror had given a statement and that it would be wiser to tell the truth, he gave the statement to which we have referred. Before doing so, he was told by the investigator that he need not make any statement at all and was warned that anything he might say could be used against him. Defendant relies upon Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568; but that case does not support his position. Bram had been held in irons, was in custody of a police officer at the time, had been stripped of his clothing and searched and was given clearly to understand that he would benefit from a confession of guilt implicating an accomplice. There was nothing of that sort here. Nor does defendant's position find support in McNabb v. United States, 318 U.S. 658, 62 S.Ct. 1305, 86 L.Ed. 1736, which dealt with the case of one who was unlawfully held in custody and subjected to third degree methods. Here, not only was defendant not under arrest, but the investigator questioning him had no warrant for his arrest and did not pretend to have. He was not urged to make a confession but merely advised that it was wiser to tell the truth as to a matter

under investigation about which he had voluntarily agreed to talk.

The rule is well settled that confessions are inadmissible when obtained from an accused by means of promises or threats which subject the mind to "the flattery of hope or the torture of fear"; and an admonition to one under arrest that he had better tell the truth about the charge against him may, of course, be given under such circumstances as to amount to a violation of the rule. Ordinarily, however, "telling the accused that it would be better for him to speak or tell the truth does not furnish any inducement, or a sufficient inducement, to render objectionable a confession thereby obtained, unless threats or promises are applied". 20 Am.Jur. 438, 439; Sparf v. United States, 156 U.S. 51, 54, 15 S.Ct. 273, 39 L.Ed. 343; Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262; Brady v. United States, 9 Cir., 148 F.2d 394; Murphy v. United States, 7 Cir., 285 F. 801, 807; Pass v. United States, 9 Cir., 256 F. 731; notes 50 L.R.A.,N.S., 1086 and 18 L.R.A., N.S., 827.

The objection made to the admissibility of defendant's statement is of the flimsiest character. When the investigator told him that the juror had given a statement, he told the truth; and, when he said that it would be wiser for defendant to tell the truth, he gave him sound advice. If defendant had continued to act upon it, instead of staying off the stand in an evident attempt to shield those who had been using him in a brazen attempt to corrupt the administration of justice, he would have placed himself in a much better position in his own conscience as well as before the court and in the estimation of all right thinking people. Courts should be careful to exclude confessions obtained by threats or promises or other inquisitorial methods; but they would stultify themselves were they to exclude voluntary statements, such as the one that we have here, merely because an accused was advised to tell the truth notwithstanding he had been warned of his rights and told that he need not make any statement at all.

Equally without merit is the exception to the charge. The elements of cor-

rupt intent and guilty knowledge were adequately covered by the general charge of the court, where, after defining the crime and charging generally on the presumption of innocence, the burden of proof and the right of accused to refrain from testifying, the court went on to say: "The issue is a narrow one, gentlemen. You are told that one of the essential elements of the alleged offense to be proved, along with all other elements, beyond a reasonable doubt, is that the defendant must have endeavored or attempted to influence a juror corruptly, that is a juror in this court. In this connection you are instructed that the term 'corruptly' means for an improper motive. Such motive may be caused by the desire to aid someone else or it may be caused by the hope of pecuniary reward or benefit. You gentlemen are to determine, upon considering the evidence as a whole, the issue which is narrow, as I have said, whether the defendant, beyond a reasonable doubt as I have defined that term, endeavored to influence a juror of this court corruptly, that is with an improper motive. If you believe that he did, your verdict should be guilty. If you are not satisfied beyond a reasonable doubt of that charge, then of course, your verdict should be not guilty."

There was no error and the judgment and sentence appealed from will be affirmed.

Affirmed.