## CALDWELL v. UNITED STATES.

### No. 11116.

United States Court of Appeals District of Columbia Circuit.

Argued February 20, 1953.

Decided June 18, 1953.

Mr. Albert J. Ahern, Jr., Washington, D. C., with whom Messrs. James J. Laughlin and Henry Lincoln Johnson, Jr., Washington, D. C., were on the brief, for appellant.

Messrs. William Hitz and Lewis A. Carroll, Asst. U. S. Attys., Washington, D. C., with whom Mr. Charles M. Irelan, U. S. Atty., Washington, D. C., at the time of argument, and Mr. Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., at the time brief was filed, were on the brief, for appellee. Mr. Leo A. Rover, U. S. Atty., Mr. George Morris Fay, U. S. Atty., Washington, D. C., at the time record was filed, and Mr. William R. Glendon, Asst. U. S. Atty., Washington, D. C., at the time of argument, also entered appearances for appellee.

Before EDGERTON, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a criminal case, in which the central issue is whether the appellant was denied a fair trial by reason of the tactics of the prosecution.

Bennie Caldwell was indicted in mid-1950 for attempting to "reach" the jurors in the criminal trial of another person.[1] He was tried and convicted in the following May. He then moved "for a judgment of acquittal or for a new trial" upon the ground, among others, "that defendant and his counsel were unwarrantedly, unduly

1. The specific offenses charged in the indictment were violations of the Federal "Obstruction of Justice" statute, 18 U.S. C. § 1503, and the District of Columbia bribery statute, D.C.Code § 22–701 (1951).

and illegally hampered and interfered with in the preparation and presentation of the defense." The motion was denied after an extended hearing. Caldwell then appealed from the judgment of conviction and from the denial of the motion for a new trial.

At the hearing upon the motion it developed that, while appellant was under indictment and before his trial, the prosecution had hired one Bradley to find out who was "behind" appellant's alleged offenses, as inciter or provider of funds. In the course of this under-cover employment, Bradley became intimately acquainted with appellant and his then counsel. Soon, Bradley was solicited to work for the defense, on a number of matters arising in the preparation of the case. He reported this to the prosecution and was told not to undertake employment with the defense or to accept money from them. But not long after, Bradley reported that the defense had offered him large sums if he would negotiate the theft of certain files, including the entire file in the Caldwell case, from the United States Attorney's office. Thereupon the prosecution caused Bradley to extend his activities with a view to bringing about conviction of persons associated with the defense for conspiracy to steal the files.

In his dual capacity as defense assistant and Government agent,[2] Bradley so conducted himself that he gained free access to the planning of the defense. At the hearing on the motion for a new trial, he testified that he. "was never refused admission into Johnson's [the defense counsel's] conferences with witnesses or lawyers. He could come and go freely and did not hear some witnesses merely because he had no opportunity to do so."[3] The Government does not dispute this. Neither his dealings with the defense nor his reports to the prosecution were limited to the proposed unlawful acts of the defense: they covered many matters connected with the impending trial.[4] The earlier inhibition against his working for the defense went overboard. The prosecution may have deplored Bradley's activity for the defense, but it knew that it was going on, got full reports on it (sometimes two or three times a day), and made little or no effort to stop it. The alleged plan to steal the files was never carried out.[5] The trial of Caldwell proceeded, with Bradley ostensibly continuing to "aid" the defense but also reporting to the prosecution. The jury found Caldwell guilty on May 18, 1951. Six days later, Caldwell filed a motion for a new trial, alleging that he had just discovered Bradley's double dealing. The motion was supported by a lengthy affidavit by Bradley. At the hearing, Bradley testified in support of the motion.

The testimony was voluminous and at some points conflicting. There is much controversy as to whether Bradley actually interfered with or prejudiced the defense. Appellant claims, for example, that Bradley led the defense into a fruitless investigation of the whereabouts of an imaginary witness. But we have endeavored, in the foregoing recital, to set forth only those facts which are conceded by the Government or are undisputed in substance.[6] The

---

2. The prosecution maintains "that Bradley was retained to give information and never as an investigator." Br. 135. Cf. Br. 150–51. But he was expected to acquire new information from time to time. For instance, the prosecution concedes "that he was to ascertain the names of defense witnesses." Br. 137. And he was paid fees totaling $775 at various times between March 14 and May 7, 1951, in part "on the basis of the value of his services." Br. 134; cf. Br. 150, 152.

3. Appellee's Br. 115.

4. For instance, Bradley reported to the prosecutor that "Johnson told Caldwell, in Bradley's presence, that Mrs. Ash was not positive of her identification of him [Caldwell] but Caldwell very vigorously disagreed with such view and also made some remarks to Johnson to· the effect that Johnson was misleading him." Appellee's Br. 149.

5. It is not necessary to our decision in this case to say whether there was in actuality a plot to steal the files. It is enough for present purposes that Bradley reported that there was such a plot, and that the prosecuting attorney took action based on that report.

6. In denying the motion for a new trial, the District Court said, in stating the facts, that "the testimony showed that the witness Bradley for some months prior to the trial was paid by the United

Government's attacks on the credibility of Bradley do not erase the main outlines of the story, as related by the prosecuting attorney himself and as revealed in the documentary evidence. We have in the record the written reports of Bradley to the prosecutor, reviewed and corrected by the latter. We may have understated the facts. But we are certain we have not overstated them.

On these basic facts, so stated, we think our decision in the Coplon v. U. S. case is controlling.[7] We there held flatly that "The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel." [8] More specifically, we held that interception of supposedly private telephone consultations between accused and counsel, before and during trial, denies the accused his constitutional right to effective assistance of counsel, under the Fifth and Sixth Amendments. And the denial "invalidates the trial at which it occurred and requires a verdict of guilty therein to be set aside, regardless of whether prejudice was shown to have resulted from the denial."[9] We see no reason why intrusion by means of wiretapping should be differentiated from intrusion by means of secret agents.[10] In neither instance, we think, need actual prejudice be shown in order to entitle defendant to a new trial.

We do not mean to deny the right—indeed the duty—of prosecuting officials to seek to uncover, prosecute and punish resort by accused persons and their counsel to theft of files or other unlawful means of defense. We recognize that the prosecutor in this case was faced with a real dilemma, once the possibility of a theft of the files had been reported by Bradley. We do not question that he then acted with what must have seemed high motives, and certainly with active diligence. But high motives and zeal for law enforcement cannot justify spying upon and intrusion into the relationship between a person accused of crime and his counsel. The Constitution's prohibitions against unreasonable searches, and its guarantees of due process of law and effective representation by counsel, lose most of their substance if the Government can with impunity place a secret agent in a lawyer's office to inspect the confidential papers of the defendant and his advisers, to listen to their conversations, and to participate in their counsels of defense. Conduct of that sort on the part of our Government is no doubt extremely rare. But if it does occur a conviction tainted by it cannot stand. Appellant's motion for a new trial should have been granted.[11]

---

States Department of Justice for information in connection with its investigation of the person or persons behind Caldwell in the attempt to tamper with the jury in the Lewis case; that while so employed he accepted employment from the defendant as a private investigator; that for some months prior to the trial and up to the morning of the third day of the trial, Bradley reported to the Assistant United States Attorney conversations by him with the defendant, his codefendants, and defendant's attorney." This is entirely consistent with our own view of the facts.

7. 1951, 89 U.S.App.D.C. 103, 191 F.2d 749.

8. 89 U.S.App.D.C. at page 113, 191 F.2d at page 759.

9. Ibid.

10. The decision of the Supreme Court in On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, does

not require a different result. The Supreme Court there held merely that a surreptitious police effort to get evidence from the accused alone was not an unreasonable search and seizure, nor otherwise so objectionable that evidence so obtained must be excluded from consideration. There, as here, the technique was to employ a secret agent who could deceive the adversary into thinking him trustworthy. But here the surreptitious effort was not designed merely to get evidence, nor was it directed against the accused alone. Nor is the legal question here whether any such evidence was improperly admitted. Here the effort involved intrusion upon conferences, supposedly open only to the most loyal, between accused *and his counsel*.

11. Appellant's motion was in the alternative—for acquittal or a new trial. It is the latter claim which is urged on this appeal, and which we sustain. But we think it well to add that the motion for

In view of our disposition of the case, the other contentions of the parties need not be considered.

Reversed and remanded for a new trial.

judgment of acquittal appears to us to have been properly denied, in the absence of any showing of prejudice to the de- fense of such a nature as would necessarily render a subsequent trial unfair to the accused.