Bennie C. CALDWELL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12096.

United States Court of Appeals, District of Columbia Circuit.

Argued June 25, 1954.

Decided Dec. 23, 1954.

Petition for Rehearing Denied Feb. 3, 1955.

Mr. Albert J. Ahern, Jr., Washington, D. C., with whom Mr. James J. Laughlin, Washington, D. C., was on the brief, for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Arthur J. McLaughlin and Samuel J. L'Hommedieu, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before EDGERTON, WASHINGTON, and DANAHER, Circuit Judges.

EDGERTON, Circuit Judge.

Caldwell appeals from a conviction [1] under Count I of an indictment. This

1. We reversed a former conviction. Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879.

count charges that he "offered a sum of money to Robert C. Fraction, endeavoring to influence the said Fraction to obtain information from the petit jurors theretofore impaneled in the United States District Court for the District of Columbia in the case of United States v. Lewis, Billeci and Acalotti (Criminal Case No. 476–49), as to the feelings and opinions of the said jurors concerning the said trial before the return of the verdict; by reason whereof, on or about January 19, 1950, within the District of Columbia, the said Bennie C. Caldwell did corruptly endeavor to influence, obstruct and impede the due administration of justice in the said United States District Court for the District of Columbia in violation of 18 U.S.C. § 1503 (1948)."

18 U.S.C. § 1503 provides that whoever "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Fraction testified that Caldwell offered him $1,000 to "get among the jurors and keep him posted. * * * He wanted me to talk with the jurors, feel them out and see how they felt towards the particular case." There was no testimony as to the motive behind Caldwell's attempt to influence Fraction to get this information. There was no testimony that Fraction accepted any money or approached any juror. Caldwell testified that he never made any offer to Fraction.

The court charged the jury "as a matter of law, that if any person endeavors to ascertain the feelings or opinions of jurors while they are sitting in a case and prior to their verdict, that is a corrupt endeavor to obstruct or impede the due administration of justice.

"Under the facts in this case, in order for you to find the defendant Caldwell guilty under Count I, the Government must prove beyond a reasonable doubt each and all of the following elements:

"(1) That there was a trial going on in the United States District Court for the District of Columbia, namely, Criminal No. 476–49, United States v. Lewis, Bellici and Acalotti;

"(2) That prior to the verdict the defendant Caldwell, in the District of Columbia, offered Robert C. Fraction money; and

"(3) That said money was offered by Caldwell for the purpose of having Fraction find out the feelings or opinions of the jurors sitting in said case.

" * * * If you find beyond a reasonable doubt that the defendant offered Robert C. Fraction a sum of money for the purpose of obtaining information as to the feelings and opinions of the jurors sitting in the Lewis case, prior to the verdict, then you are instructed, as a matter of law, that such act was a corrupt endeavor to influence, obstruct, or impede the due administration of justice in this court, and that is all that the Government must prove in order to establish the defendant's guilt under Count I."

The Supreme Court has said: "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. * * * The integrity of jury proceedings must not be jeopardized by unauthorized invasions." Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451. That unauthorized invasions "obstruct, or impede, the due administration of justice" is as plain as that they are prejudicial. Even "shadowing" jurors, without their knowledge, obstructs justice. Sinclair v. United States, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938. Since unauthorized invasions of the integrity of jury proceedings are evil, they are "corrupt". Cf. Bosselman v. United States, 2 Cir., 239 F. 82, 86; United States v. Polakoff, 2 Cir., 121 F.2d 333, 335.

■ The construction of the statute is a question of law for the court. The only questions of fact in the case are the questions the judge submitted to the jury. The only intent involved in the crime is the intent to do the forbidden act. The defendant "must have had knowledge of the facts, though not necessarily the law, that made" his act criminal. Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 254, 96 L.Ed. 288.

■ No doubt one part of the judge's charge to the jury was too broad to be strictly accurate. Attempts by some persons in some circumstances to ascertain the feelings or opinions of jurors in a pending case might not be corrupt endeavors to obstruct or impede justice. If, for example, a bailiff made the attempt, believing he was carrying out an order of the trial judge, he might not be guilty. But such possibilities have nothing to do with this case. Caldwell's defense was an alibi. There was no evidence of any circumstance, and no contention that there was any circumstance, that might create a justification, privilege, or excuse for his attempt to ascertain the feelings or opinions of the jurors in the Lewis case. It follows that if, in not informing the jury that there might be such circumstances in some cases, the court can be said to have erred, the error did not affect substantial rights. It was completely harmless. To reverse this conviction would be like reversing an ordinary homicide conviction because the court did not explain to the jury that the homicide would have been justified if the accused had been a public officer duly executing a valid death sentence. Rule 52 (a) of the Federal Rules of Criminal Procedure [18 U.S.C.] provides that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Supreme Court has said "If, when all is said and done, the conviction is sure that the error did not influence the jury * * * the verdict and the judgment should stand * * *." Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557.

■ There is one more reason for affirmance. Rule 30 of the Federal Rules of Criminal Procedure provides among other things that "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Appellant's counsel did not state to the trial judge the respect in which the charge was inaccurate. Counsel said: "I think Your Honor stated in substance that if they find that Caldwell attempted to ascertain the feelings or opinion that would constitute a violation of the statute. We object to that, Your Honor, and say that the jury should have been instructed that they must go beyond that, and that they must find that there was an actual intent to effect it, in the discharge of their duties." This was incorrect. Cf. Sinclair v. United States, supra.

Affirmed.

WASHINGTON, Circuit Judge (dissenting).

Tampering with a jury is an abhorrent crime, poisonous to our system of justice. The evidence against Caldwell was ample. But I am forced to the conclusion that the erroneous instructions given to the jury were highly prejudicial to the accused and deprived him of due process of law. He must, in my view, be granted a new trial. Such a trial would—regrettably— be his third, since the first trial had to be set aside because of the tactics of the prosecution. Caldwell v. United States, 1953, 92 U.S.App.D.C. 355, 205 F.2d 879. But the standards of justice cannot be relaxed in such a situation: the fact that an accused has undergone more than one trial does not dilute his right to just and lawful treatment. See Leyra v. Denno, 1954, 347 U.S. 556, 74 S.Ct. 716.

The statute here is aimed at any person who "corruptly" endeavors to influence a juror. 18 U.S.C. § 1503 (1951). The

word "corruptly," the Fourth Circuit has said, "means for an improper motive." Martin v. United States, 1948, 166 F.2d 76, 79. The instructions to the jury trying Caldwell told them that "as a matter of law" anyone who seeks to ascertain the feelings or opinions of jurors while they are sitting in a case and prior to a verdict is engaged in "a corrupt endeavor to obstruct or impede the due administration of justice." This took from the jury a crucial issue—that of criminal intent. Corrupt motive is one of the essential elements of the crime defined in the statute: the issue whether the accused had that motive is one for the Government to prove beyond a reasonable doubt, and for the jury to determine on that proof. Martin v. United States, supra. The Supreme Court has only recently warned us that the judge cannot usurp this function of the jury: he cannot "presume" criminal intent from the defendant's actions. Morissette v. United States, 1952, 342 U.S. 246, 274, 72 S.Ct. 240, 96 L.Ed. 288. To allow him to do so would be to "strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries." Id., 342 U.S. at page 263, 72 S.Ct. at page 249.[1]

True, Caldwell's counsel did not make precisely this argument to the trial court. But he objected to the charge as given, because it told the jury that "if they find that Caldwell attempted to ascertain the feelings or opinion [of the Lewis jury] that would constitute a violation of the statute." His point was well taken. And even assuming that we are to treat the case as if no objection were raised, we must still grant a new trial. In Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, where the question of criminal intent was submitted to the jury without proper instructions, and no objection was raised, the court reversed the conviction, saying: " * * * where the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it is necessary to take note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial." Id., 325 U.S. at page 107, 65 S.Ct. at page 1038. I think we must make a like holding here.

---

[1]. As has been noted, the crime at hand is one for which the requirement of criminal intent is well established. The reasoning of Morissette is thus directly applicable to it. It is further to be noted that the crime of influencing a juror is part of the ancient common-law crimes of embracery and of obstructing justice. 18 Am.Jur. 616; 39 Am.Jur. 501–2. It was embodied in the statutory law of the United States by Act of March 2, 1831, "An Act declaratory of the law concerning contempts of court." 4 Stat. 487, 488.