**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Geoffrey DISSTON, Defendant-Appellant.**

**No. 77–1353.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1978.
Decided Aug. 15, 1978.

Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Terry A. Zitek, Chicago, Ill., for plaintiff-appellee.

Before PELL, TONE and BAUER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the district court's orders denying without an evidentiary hearing the defendant's (Disston) motion for new trial on the basis of newly discovered evidence, Fed.R.Crim.P. 33, and denying his petition for writ of habeas corpus, 28 U.S.C. § 2255. Disston seeks relief on the ground that he was denied his Sixth and Fourteenth Amendment rights during his trial in which he was convicted for mail fraud.[1] He first argues that the Government violated his rights by failing to inform him that his co-defendant, Roger Camp, was a Government informer. This, he argues, hindered his ability to succeed in his pre-trial motion to sever, hindered his ability to cross-examine Camp, and required him to stand trial with a co-defendant who may have offered the Government information regarding his (Disston's) trial strategy. Second, he argues that he was denied his Fifth Amendment due process rights because the Government refused to provide him tape recordings of Camp's conversations.

---

1. Disston's conviction was affirmed on direct appeal in an unpublished order. *United States v. Disston*, 525 F.2d 694 (7th Cir. 1975).

■ Because of these alleged violations, Disston requests that this court at the very least remand for an evidentiary hearing to determine, *inter alia*, whether Camp's informer status prejudiced his trial and whether the Government knowingly or in bad faith failed to turn over the tape recordings and failed to disclose Camp's informer status. The Government, however, now concedes that the district court should have granted an evidentiary hearing,[2] and we agree. *See, e. g., Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Esposito*, 523 F.2d 242 (7th Cir. 1975); *United States v. Gerard*, 491 F.2d 1300 (9th Cir. 1974); *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953). Disston seeks alternatively that we remand for a new trial or with instructions to dismiss the indictment. We must, therefore, examine the Government's conduct to determine whether, on the basis of the record now before us, we should conclude that the Government's conduct constitutes grounds for a new trial or dismissal of the indictment. Although we view the Government's conduct or misconduct as a whole, we will first address the issue of Camp's informer status, and then the Government's failure to disclose that status and to turn over the tapes.

## I. *The Co-defendant Informer*

If Disston's co-defendant was a Government informer, and if he obtained information prejudicial to Disston or regarding Disston's trial strategy which he then transferred to the Government, Disston's conviction should be reversed. *See Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953). The newly discovered evidence on which Disston bases his claim for relief indicates at least that Camp had met with Government agents and provided them with some information.[3] Although the evidence is sufficient to label Camp an informer, it does not suggest that Camp provided the Government with any information that might prejudice Disston's trial.

■ This, however, does not exonerate the Government *vis-a-vis* Disston, because the Government never disclosed Camp's informer status and thus the district court was never apprised of the scope of Camp's relationship with the Government. That Camp was a Government informer during the same general time period that he was tried with Disston, and that the Government failed to disclose this fact, at least raises an issue of whether his relationship with the Government may have prejudiced Disston. A determination of this issue requires more facts and, therefore, an evidentiary hearing is appropriate. If the information Camp gave the Government was irrelevant to the Camp-Disston trial and could not have prejudiced Disston, then the fact that Camp and Disston were tried together would not constitute reversible error.[4]

## II. *The Government's Non-disclosure of Evidence*

The Government's failure to disclose Camp's informer status and its failure to turn over the tapes of telephone conversations between Camp and Edelson raised a difficult question of Government misconduct. Prior to trial, Disston filed a discovery motion seeking recorded statements of Camp. The district court granted the

---

**2.** In his original brief in the present appeal, Disston prayed in the alternative for remand for dismissal or new trial, or remand for an evidentiary hearing. Subsequent to the Government's concession as to the necessity for an evidentiary hearing, the Disston reply brief prayer was narrowed to dismissal or new trial. We do not regard the omission as constituting a complete abandonment of the earlier requested alternative relief.

**3.** The newly discovered evidence includes testimony of Camp and Government agents in *Unit-*

ed States v. French*, 75 Cr 448 (N.D.Ill.), and *United States v. Edelson*, 75 Cr 630 (N.D.Ill.), which indicated Camp's status as a Government informer, and tape recordings made by Camp of telephone conversations between himself and Mitchel Edelson, an attorney, which Camp had provided to the Government. Edelson later represented Camp at trial.

**4.** Disston filed a motion to sever on April 19, 1974 which was denied on April 26, 1974.

motion on March 13, 1974.[5] On April 30, 1974, Camp filed a pre-trial discovery motion seeking electronically recorded conversations to which he was a party and this motion was granted on June 13, 1974. Although the district court granted these motions, the Government did not turn over the tapes in question. The Government's response throughout the trial was that it was unaware of any such eavesdropping or electronic surveillance of Camp, and affidavits to this regard were filed by the Assistant U. S. Attorney who prosecuted the case.[6]

The newly discovered evidence indicates that Camp met with some Government agents in New York several months before the trial and thereafter remained in contact with these and other agents. He personally tape-recorded conversations between himself and Mitchel Edelson, the Chicago attorney who later represented Camp during the trial. Camp apparently gave these tapes to Government agents in Chicago in April 1974. The Government agents were not members of the U. S. Attorney's Office and there is no evidence that the U. S. Attorney or his assistants had knowledge of these tapes.[7] The district court examined the tapes *in camera* during post-conviction proceedings and concluded that the tapes were entirely irrelevant to the Camp-Disston trial. It, therefore, denied post-conviction relief.

■ The record before us is deficient for the purpose of making two critical determinations. Primarily, it lacks sufficient facts regarding the circumstances of the Government's non-disclosure of the tapes and of Camp's informer status, e. g., the good faith, bad faith, or inadvertence of the prosecutors.[8] Secondarily, the parties did not have a full opportunity to demonstrate the relevancy and materiality of the tapes as they would have had in the factual context that might have been developed with an evidentiary hearing. The district court's decision does indicate that Disston was ordered to prepare a transcript of tape recordings which had been filed *in camera* and to specify the way in which he was prejudiced by the matters contained in the transcripts. Whether with an evidentiary hearing Disston can demonstrate any prejudice which he could not with only the tapes themselves remains to be seen. We are concerned at the present moment with his having the opportunity to try.[9]

■■ In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court held that

the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

---

5. The district court granted the motion conditional upon Camp not being a prospective Government witness, which he was not. *See* Fed.R.Crim.P. 16(a)(2).

6. The Assistant U. S. Attorney who prosecuted this case filed affidavits in late July and August of 1974, after the trial, which stated that he was "not aware of any electronic surveillance of the defendant Roger Camp or of any premises owned, leased or occupied by him," and that he had been advised by the Department of Justice that the following agencies had not conducted electronic surveillance of Roger Camp: Federal Bureau of Investigation, Securities and Exchange Commission, Secret Service, Post Office, Internal Revenue Service, Customs Service, Alcohol, Tobacco Tax and Firearms Division, Department of the Treasury, and Drug Enforcement Administration.

7. The agents who received the tapes apparently were agents of the Secret Service and Chicago Strike Force.

8. For example, the accuracy of the prosecutor's affidavits was not probed. *See* note 6 *supra.*

9. Our decision in this case carries no implication that due process requires that tape recordings be made automatically available to a defendant. On a case-by-case basis, the trial judge will have to determine the appropriateness of the tapes, or parts thereof, being made available. In the case before us it had been determined that the tapes should be made available but there was non-compliance with the order followed by post-trial ascertainment that the recorded messages were those of a Government informer. We do not intend to lay down any principles regarding pre-trial or trial use of such recordings beyond the narrow factual confines of the particular case before us.

Thus a finding of materiality is a critical aspect of the due process analysis. Moreover, although the good faith or bad faith of the prosecutor is irrelevant if the evidence is material, the good or bad faith of the prosecutor may well bear on the materiality determination. In *United States v. Esposito, supra* at 248–49, this court stated

> [A] court should be less inclined to hold unproduced evidence immaterial or to hold the non-production of admittedly material evidence harmless error if the prosecutor's failure to reveal the evidence was not in good faith. . . . On the other hand, if the non-production is in good faith, no special benefit of the doubt need be given the defendant's position. [Citations omitted.]

We note also that the standard for materiality may differ depending on whether the defendant specifically requested the non-disclosed evidence. *Compare United States v. Agurs*, 427 U.S. 97, 106, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *with Brady v. Maryland, supra. See also United States v. Anderson*, 574 F.2d 1347, 1353–55 (5th Cir. 1978); *United States v. Keogh*, 391 F.2d 138, 147 (2d Cir. 1968); *Jones v. Jago*, 428 F.Supp. 405, 408 (N.D.Ohio 1977). Thus the materiality standard for non-disclosure of the tapes would be different than for non-disclosure of Camp's informer status.

In any event, these are issues that cannot be properly resolved without a more complete development of the facts. We, therefore, remand to the district court for an evidentiary hearing. After the facts have been fully developed, the district court should order a new trial if it finds that the non-disclosure was not harmless. *See Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In addition, the court should examine the prosecutor's conduct as a whole to determine whether it was so egregious as to merit dismissal of the indictment. This latter disposition is, of course, an extraordinary one which should be reserved for only the most serious misconduct.

Accordingly, the order denying the post-conviction motions is vacated and this cause is remanded for further proceedings before the same trial judge, said further proceedings to be consistent with this opinion.