UNITED STATES of America, Plaintiff,

v.

Richard PETERS, Defendant.

No. 78–79–CR.

United States District Court,
S. D. Florida,
Criminal Division.

March 29, 1979.

R. Jerome Sanford, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Joseph Beeler, Miami, Fla., for Mitchell Battleman.

Samuel E. Smith, Miami, Fla., for Richard Peters.

## MEMORANDUM OPINION

GONZALEZ, District Judge.

THIS CAUSE is before the Court upon the Motions to Dismiss of Defendants, Mitchell Battleman and Richard Peters. The defendants assert a violation of their Sixth Amendment right to the assistance of counsel.

The facts are neither complicated nor in dispute. On March 9, 1978 the Grand Jury for the Southern District of Florida returned a "sealed" indictment against Mitchell Battleman, Richard Peters, and John Doe, a/k/a Lance. The five count indictment alleges various violations concerning the possession and distribution of "non-narcotic controlled substances."

Arrest warrants were issued on March 13, 1978, and defendant Mitchell Battleman, was arrested on April 17, 1978. Nine days later agents of the federal Drug Enforcement Administration proceeded to the residence of defendant Richard Peters and arrested him.

During the arrest Defendant-Peters intimated that he already knew of the indictment and that the gist of it was contained on a tape recording in a cassette player next to the telephone in his living room.

The Government seized the tape as "evidence". The Government has been unable to establish what the tape was evidence of to justify its seizure. In fact, Agent Mantyla stated that when he seized the tape "(he) was not concerned so much as evidence (sic) . . . (and that) he had no reason to believe a law had been violated." Suppression Hearing Transcript, pp. 38–39. Agent Mantyla testified that he was primarily concerned with the manner in which Peters obtained knowledge of a "sealed" indictment. The indictment had, of course,

been "unsealed" nine days earlier when defendant-Battleman was arrested.

To satisfy his concern, Agent Mantyla returned to his office where he played the tape "several times . . . a half a dozen times." Agent Mantyla conceded that the initial conversational exchanges on the tape identified the conversation as one between the two defendants, Battleman and Peters, and their attorney, Jeffrey Weiner.

Peters had been informed by Battleman following the latter's arrest that Peters was also charged in the indictment. Peters then initiated a three-way telephone call between himself, Battleman, and their attorney, Mr. Weiner. Mr. Peters taped the conversation and it is the recording of this conference which the government agents seized.

The tape reveals that Battleman read the contents of the indictment over the telephone for the benefit of both Peters and their attorney, Weiner. There followed a discussion of the possible defenses to the charges as well as possible methods to discredit a government informant.

Agent Mantyla conceded that he was aware that the defendants were discussing possible defenses to the indictment. Agent Mantyla also knew that Battleman and Peters were both named as defendants in the indictment, and that Mr. Weiner was their attorney. Despite this Agent Mantyla listened to the tape, not once, but six times. Thereafter, he called Mr. Joel Fanning, the Assistant United States Attorney whose signature appeared on the indictment; and, Mr. Fanning listened to the tape at least twice knowing beforehand that the tape recording consisted of a conference between defense counsel Weiner and his clients Battleman and Peters.

Parenthetically, it should be noted that defendant-Battleman timely moved to suppress this tape recorded conversation. This motion was heard by the Honorable Herbert S. Shapiro, United States Magistrate, who recommended to the District Judge that the tape and its contents be suppressed on Fourth Amendment grounds.

Judge Shapiro's Report and Recommendation are attached hereto as an appendix to this Order, and are hereby approved and adopted as the order of this Court.

The Court has little difficulty in concluding that an impermissible invasion of the attorney-client relationship has occurred, although there exists a paucity of judicial treatment of this type of Sixth Amendment violation to assist the Court in arriving at an appropriate remedy. See, *Hoffa v. United States*, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1966); *United States v. Levy*, 577 F.2d 200 (3rd Cir. 1978); *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879; and *Coplon v. United States*, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951).

The defendants insist that dismissal of the indictment is the only viable solution. This Court precariously agrees.

In the celebrated espionage case of *Coplon v. United States*, supra, the defendant, Judith Coplon, moved for new trial following her conviction on espionage and counter-espionage charges. *Id.* at 110, 191 F.2d at 756. The defendant alleged that the F.B.I. had illegally "intercepted telephone conversations between her and her counsel, both before and during her trial." *Id.* at 111, 191 F.2d at 757.

In refusing to grant the defendant a new trial, the District Court held that the violation of the defendant's Sixth Amendment right to counsel would not compel a new trial "unless such conduct was the means of procuring evidence to convict the defendant." *Id.* Absent this the trial court noted that "Damnum absque injuria" would apply. The D.C. Court of Appeals reversed and remanded holding "the Fifth and Sixth Amendments . . . unqualifiedly guard the right to assistance of counsel without making the vindication of the right depend upon whether its denial resulted in demonstrable prejudice." *Id.* at 113, 191 F.2d at 759. The Court also stated: "We think it is further true that the right to have the assistance of counsel is so fundamental and absolute that its denial invalidates the trial at which it occurred and requires a verdict of guilty therein to be set aside, regardless of whether prejudice was shown to have resulted from the denial" *id.* Quoting from the U.S. Supreme Court decision of *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), the Court noted that "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

In remanding, the Circuit Court directed a hearing to determine whether the conversations were, in fact, intercepted. If they were, the Court in *Coplon* ordered, as did the Supreme Court in *Glasser*, that the defendant be afforded a new trial.

In *Caldwell v. United States, supra* the D.C. Circuit Court of Appeals again confronted a case involving a defendant's right to the effective assistance of counsel. In *Caldwell* the Government employed an agent to invade the "defense camp". The Government agent managed to get himself employed by the defendant's attorney to aid in the defense of Caldwell. Being so employed the agent became privy to confidential attorney-client communications. These communications were then conveyed to the Assistant U.S. Attorney. *Id.* 92 U.S.App. D.C. at 356, 205 F.2d at 880.

Upon learning these facts, the defendant moved for acquittal or a new trial. *Id.* at 355, 205 F.2d at 879. The Court, relying upon its earlier holding in *Coplon v. United States, supra*, stated: "We see no reason why intrusion by means of wiretapping should be differentiated from intrusion by secret agents. In neither instance, we think, need actual prejudice be shown in order to entitle defendant to "a new trial." *Id.* at 357, 205 F.2d at 881.

The Court added by footnote, however, Appellant's motion was in the alternative—for acquittal or a new trial. It is the latter claim which is urged on this appeal, and which we sustain. But we think it well tc add that the motion for judgment of acquittal appears to us to have been properly denied, in the absence of any showing of prejudice to the de-

fense of such a nature as would necessarily render a subsequent trial unfair to the accused. *id.* at 357–358 fn. 11, 205 F.2d at 881–82 fn. 11.

Caldwell was afforded a new trial, and was again convicted. 95 U.S.App.D.C. 35, 218 F.2d 370. The Supreme Court declined review. 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260.

The United States Supreme Court characterized the Government's actions in *Coplon* and *Caldwell* as "intrusion(s) of the grossest kind upon the confidential relationship between the defendant and his counsel," *Hoffa v. United States*, 385 U.S. 293, 306, 87 S.Ct. 408, 416, 17 L.Ed.2d 374 (1966).

The Supreme Court further "assume[d] that the *Coplon* and *Caldwell* cases were rightly decided," *id.* at 307, 87 S.Ct. at 416. Footnoting to the *Caldwell* decision, the Supreme Court stated that "[i]t is possible to imagine a case in which the prosecution might so persuasively insinuate itself into the councils of the defense as to make a new trial on the same charges impermissible under the Sixth Amendment." *Id.* at 308, 87 S.Ct. at 416.

The Supreme Court in *Hoffa* also alluded to the possible application of the *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) Fourth Amendment doctrine. *Wong Sun* requires an analysis of the evidence used to convict a defendant to determine whether it was the product of the government's illegal conduct or whether it derived from sources " 'sufficiently distinguishable to be purged of the primary taint.' " *Id.* 385 U.S. at 309, 87 S.Ct. at 417. The Court, however, refused to *hold* that this is the standard to apply, finding instead that Mr. Hoffa's Sixth Amendment right to counsel was not violated. *Id.*

In *United States v. Levy*, 577 F.2d 200 (3rd Cir. 1978) the Third Circuit recently held that dismissal of the indictment is the only appropriate remedy for the Sixth Amendment violation which occurred when law enforcement officials used a government informer to obtain information concerning defense strategy. *Id.* at 210. The Court rejected the Government's argument

that the Court should weigh the prejudice to the defendant on a case by case basis before dismissing. *Id.*

The Court stated:

Where there is a knowing invasion of the attorney-client relationship and where confidential information is disclosed to the government, we think that there are overwhelming considerations militating against a standard which tests the sixth amendment violation by weighing how prejudicial to the defense the disclosure is. . . . [I]t is highly unlikely that a court can, in such a hearing, arrive at a certain conclusion as to how the government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself. *Id.* at 208.

Without citing to *Hoffa v. United States, supra,* the Third Circuit found inappropriate the application of the *Wong Sun v. United States, supra,* doctrine. The Court reasoned as follows:

Of course, the difficulties to which we refer could be obviated by a sufficiently severe definition of prejudice. For example, we could hold, by analogy to fourth amendment case law, that no prejudice occurs unless it is shown that some of the government's evidence would have been unknown to it, and thus unavailable, except for the disclosure of a confidence. Cf. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Government of Virgin Islands v. Gereau*, 502 F.2d 914, 927–28 (3d Cir. 1974). The analogy is not a good one, however, for the interests at stake in the attorney-client relationship are unlike the expectations of privacy that underlie the fourth amendment exclusionary rule. The fundamental justification for the sixth amendment right to counsel is the presumed inability of a defendant to make informed choices about the preparation and conduct of his defense. Free two-way communication between client

and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful. The purpose of the attorney-client privilege is inextricably linked to the very integrity and accuracy of the fact finding process itself. Even guilty individuals are entitled to be advised of strategies for their defense. In order for the adversary system to function properly, any advice received as a result of a defendant's disclosure to counsel must be insulated from the government. No severe definition of prejudice, such as the fruit-of-the-poisonous-tree evidentiary test in the fourth amendment area, could accommodate the broader sixth amendment policies. We think that the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case. Any other rule would disturb the balance implicit in the adversary system and thus would jeopardize the very process by which guilt and innocence are determined in our society. In the instant case confidential information was disclosed to the government authorities. *id.* at 208–209.

This Court finds the reasoning of the Third Circuit highly persuasive and adopts it here.

There is no doubt that there was a violation of the defendants' Sixth Amendment right to the effective assistance of counsel by reason of the government's illegal conduct.

The indictment will be dismissed as to the defendants Battleman and Peters.

APPENDIX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 78–79–Cr–JAG

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff | : |
|  | : |
| – vs – | : |
|  | : |
| RICHARD PETERS, MITCHELL BATTLEMAN and JOHN DOE, a/k/a LANCE, | : |
| Defendants | : |
|  | : |

REPORT AND RECOMMENDATION

An Evidentiary Hearing was held before the undersigned on October 27, 1978 on the Motion of the Defendant, MITCHELL BATTLEMAN to Suppress a tape recorded conversation alleged to have taken place between the defendant, MITCHELL BATTLEMAN, the defendant, RICHARD PETERS, and attorney, Jeffrey S. Weiner.

Such Motion was joined in by the defendant, RICHARD PETERS.

The undersigned makes the following findings of fact and law.

I. FINDINGS OF FACT

A. Defendant, RICHARD PETERS was arrested by Drug Enforcement Agent, Frank J. Cellino, who was executing an

Arrest Warrant issued for the arrest of RICHARD PETERS.

B. The actual arrest and the handcuffing of the defendant, PETERS, took place immediately outside the front door of the premises 4975 N.W. 178 Terrace, North Miami Beach, Florida, a single family dwelling.

C. RICHARD PETERS was wearing a bathrobe at the time of the arrest and requested to go back inside the dwelling to dress.

D. Inside the dwelling was an adult female.

E. Four Drug Enforcement Agents; Cellino, Mantilla, Wagner and Franco plus some members of the local police force participated in the arrest or in securing the premises. Defendant PETERS was well-guarded and had no opportunity to reach for or obtain any weapon.

F. The agents were in the house between twenty to thirty minutes. Agent John Mantilla engaged PETERS in conversation and PETERS told Agent Mantilla that he knew about the pending Indictment; that he had recorded it on a tape recorder. The tape recorder was on a table in the living room a few feet from where PETERS was standing.

G. PETERS did not reply to Agent Mantilla's question as to how he came about to know of the Indictment. This excited the interest of Agent Mantilla and he and Agent Wagner seized the tape recorder and removed the tape cassette from it.

H. Agent Mantilla felt that some crime must have been committed by PETERS in his gaining knowledge of the Indictment in as much as the Indictment had been sealed by the Court when returned. He was not concerned with the tape being evidence of the crime for which PETERS had been arrested, but as to why or how PETERS got knowledge of the sealed Indictment.

I. Agent Mantilla overlooked the fact that multiple defendants had been charged in the indictment and that one, BATTLE-MAN, already had been arrested on the West Coast on April 12, 1978.

J. Defendant PETERS did not give any permission or consent to any one to take or listen to the tape.

K. Agent Mantilla took the tape cassette to the DEA Office where he played it several times; he has learned the contents thereof and has discussed it with several other agents as well as has played it in the presence of the Assistant U.S. Attorney and has discussed it with him.

L. The tape started off with the words, "We are in the attorney's office". Agent Mantilla knew that the attorney was Jeffrey Weiner and that from the tape, attorney Weiner was representing BATTLE-MAN, and from PETERS, that attorney Weiner was also representing him. At some points in the tape, attorney Weiner also partook in the conversation so that it was a three-way conversation at times.

M. The taped conversation contained matters pertaining to the defense of the defendants as well as admissions by the defendants.

N. The seizure of the tape was not for any evidentiary purpose pertaining to the crime for which the arrest was made.

O. No search warrant had been obtained for the seizure of the tape recording.

## II. FINDINGS OF LAW

A. The warrantless seizure of this tape recording without the consent of the possessor or owner thereof and not as part of any evidentiary proof of the commission of the crime for which the arrest was made was illegal. "The arrest must not be a mere pretext for an otherwise illegitimate search." *Amador-Gonzalez v. United States,* 391 F.2d 308, 313 (5th Cir. 1968).

B. The tape in the recording machine was not contraband in and of itself nor apparently so and the seizure thereof would not be authorized under the "Plain View" doctrine of *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), or of *United States v. Woods,* 560 F.2d 660 (5th Cir. 1977). The seizure was not authorized as a warrantless search

made pursuant to or concomitant with lawful arrest. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

C. The Government had no lawful right to the seizure of the tape nor to its contents and any evidence or fruits obtained through information revealed in such tape should be suppressed.

It is the recommendation of the undersigned that the tape seized by the Government at the residence of RICHARD PETERS be suppressed; that the tape and any and all copies and transcripts thereof and/or parts thereof be returned forthwith to RICHARD PETERS and that any evidence or fruits obtained or ascertained through information revealed in such tape be SUPPRESSED.

DONE AND ORDERED at Miami, Florida, this 2 day of NOVEMBER, 1978.

(s) Herbert S. Shapiro
United States Magistrate

c.c.: Joel Fanning, A.U.S.A.
Samuel Smith, Esq.
Bruce Fleisher, Esq.
Alan S. Ross, Esq.