### In re GRAND JURY MATTERS.

### No. C84–338, C84–339, C84–346, C84–347, C84–374–L.

United States District Court, D. New Hampshire.

July 5, 1984.

W. Hunt Dumont, U.S. Atty. by Robert J. Lynn, Asst. U.S. Atty., Concord, N.H., for plaintiffs.

Steven M. Gordon, Concord, N.H., Wiggin & Nourie by Richard B. McNamara, Manchester, N.H., Ellis, Fogelnest & Newman, P.C. by Alan Ellis, Philadelphia, Pa., Harry C. Mezer, Albert F. Cullen, Jr., Cullen & Wall, Boston, Mass., Backus, Shea & Meyer by H. Jonathan Meyer, Manchester, N.H., John Reinstein, Andrew Good, John Wall, Silverglate, Gertner, Baker & Fine by Judith H. Mizner, Boston, Mass., for defendants.

James D. Forsyth, II, Manchester, N.H., for S. Gordon.

Charles Nesson, Cambridge, Mass., for Wall and Cullen.

Ray Raimo, Manchester, N.H., for Hodes.

## ORDER ON MOTION TO QUASH SUBPOENA

LOUGHLIN, District Judge.

On May 15, 1984 Attorney Paul W. Hodes, counsel for Robert Hollingworth, a defendant in the Rockingham County Superior Court and Attorney Steven M. Gordon, counsel for Benjamin Valenzuela, also a defendant in Rockingham County Superior Court, moved to quash subpoenas served upon them to appear before the Federal Grand Jury for the District of New Hampshire.

Hodes was served at his home at approximately 9:00 P.M.

An in camera hearing was held May 15, 1984 in chambers and an agreement was reached to hold the matter in abeyance pending a date certain for a hearing.

Subsequently the issue of subpoenas was further exacerbated by additional subpoenas being served upon other attorneys in the Rockingham County cases, who also sought to quash subpoenas served upon them to appear before the Federal Grand Jury for the District of New Hampshire.

Grand jury subpoenas were issued to Attorneys Albert Cullen, John Wall and Nancy Gertner.

The subpoenas ordered the recipients to have with them when they appeared before the Grand Jury

any and all records concerning legal fees, expenses, and any and all other monies paid to or received by you or your law firm by or on behalf of _____, including but not limited to:

1. ledgers showing date, amount, form (e.g. cash, check, etc.) and source of any monies received;

2. copies of deposit tickets, cancelled checks and all other backup documentation for all monies received;

3. retainer agreements; and

4. copies of all billings and/or charge or expense invoices or advices.

Attorney Gertner is counsel for Alvin Kanigher, Attorney Cullen for Stephen Young and Attorney Wall for Antimo DiMatteo. Kanigher, Young and DiMatteo are also co-defendants in the Rockingham County Superior Court cases.

Additionally, Attorney Cullen is requested to provide testimony and records pertaining to the dates, times and places (but not the content) of any meetings or telephone conversations between Young and his law firm, as well as information concerning the transfer or other disposition of any funds received by him or his firm from Young.

In the United States Attorney's memorandum of law in opposition to motions to quash he candidly admits,

A federal grand jury for the District of New Hampshire is conducting an investigation of federal drug and tax offenses

allegedly committed by Stephen D. Young, Antimo DiMatteo, Benjamin Valenzuela, Alvin Kanigher, Robert Hollingworth and others.

The actions of the U.S. Attorney have elicited a ululation of protest and surprise from the New Hampshire Bar Association, National Association of Criminal Defense Lawyers, New Hampshire Civil Liberties Union, Civil Liberties Union of Massachusetts and the Massachusetts Association of Criminal Defense Lawyers, all allowed to file as intervenors in this action.

As heretofore stated, all defendants have been indicted as of February 7, 1984 in Rockingham County and probably will not be tried prior to the late fall or early winter of 1984.

A very important premise is that the actions *are pending* in a New Hampshire State Court and under investigation in the United States Federal Court for the District of New Hampshire.

*In Re Terkeltoub*, 256 F.Supp. 683 (S.D.New York, 1966) Terkeltoub, an attorney was called before a grand jury concerning a charge of perjury against his client before another grand jury. A conversation which occurred in a restaurant involving Terkeltoub, his client and a third individual was the focus of the inquiry.

Judge Frankel in a cogent, erudite opinion at length quoted the following.

On his appearance before the grand jury, Mr. Terkeltoub was asked questions (as the Government's Memorandum accurately summarizes them) "as to his alleged meeting, in the company of his client, with a third party, Tony Vone— the fact of such a meeting, the place, its duration, its initiation and purpose and the conversation which took place."

Mr. Terkeltoub asserted that answers by him to these questions would effect a deprivation of his client's rights to due process under the Fifth Amendment and to the effective assistance of counsel under the Sixth. Amplifying this view, he said: "If I am told by the Court that I am not breaking a professional confidence and privilege, then I will answer those questions providing there is nothing personal insofar as I am concerned."

It is common ground that this refusal to answer is not based upon the traditional attorney-client privilege. Here, then as in *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), there is no necessity "to delineate the content and scope of that privilege as recognized in the federal courts."

Elimination of that privilege simplifies the problem, but does not make it simple. On the one hand, there is the heavy weight of history and public need commanding that the grand jury's investigations be as unfettered as possible. See, e.g., *United States v. Thompson*, 251 U.S. 407, 413–415, 40 S.Ct. 289 [291–292] 64 L.Ed. 333 (1920). And the Government comes here with the laudable purpose of guarding against suspected attacks on the integrity of the judicial process itself. Cf. *Massiah v. United States*, 377 U.S. 201, 207, 84 S.Ct. 1199 [1203] 12 L.Ed.2d 246 (1964); *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879, 881 (1953), cert. denied 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955). On the other hand, the disclosures now demanded touch a vital center in the administration of criminal justice, the lawyer's work in investigating and preparing the defense of a criminal charge. Appraising these interests in the circumstances now presented, the court concludes that the attorney was not only entitled, but probably required, to withhold answers to the grand jury's questions.

In explaining this conclusion, it bears emphasis that while the witness before us is a lawyer, the crucial interests at stake belong to the whole community. As a seasoned trial lawyer and Justice said, "It too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice.  * * *  The welfare and tone of the legal profession is therefore of prime consequence to society, which would feel the consequences" of a practice impair-

ing the lawyer's effective representation of his client. *Hickman v. Taylor, supra,* 329 U.S. at 514–515, 67 S.Ct. at 395 (Jackson, J., concurring).

In the same opinion, Mr. Justice Jackson said (id. at 5127, 67 S.Ct. at 396):

"Every lawyer dislikes to take the witness stand and will do so only for grave reasons. This is partly because it is not his role; he is almost invariably a poor witness. But he steps out of professional character to do it. He regrets it; the profession discourages it. But the practice advocated here is one which would not force him to be a witness, not as to what he has seen or done but as to other witness' stories, and not because he wants to do so but in self-defense.

And so we start here with a demand that is troublesome on its face—a demand that a lawyer be forced to testify about his work in supposed defense of a client. Our problem is not solved, but it is affected, by a recognition that this sort of procedure must have at least a slightly chilling impact upon counsel for defendants in criminal cases. Again, this has nothing to do with whether lawyers for their own sakes should be treated better or worse than other people. It has to do with how the public may fare depending on the course followed with applications like the one before us.

The attorney whose testimony is now sought is concerned at the moment with "perhaps the most critical period of the proceedings" against the defendant Fiorillo—"from the time of * * * arraignment until the beginning of * * * trial, when consultation, thorough-going investigation and preparation [are] vitally important * * *." *Powell v. State of Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). At the heart of the job of "thorough-going investigation and preparation" is the interviewing of prospective witnesses, hostile as well as friendly. And no lawyer, on any side of any case, would consider it salutary for his client that the opposition knew who was being interviewed and what was being said during such meetings. If vivid illustration were needed, it is supplied every day in this courthouse by the Government's stout resistance to discovery efforts by defendants in criminal cases.

■ Because privacy is so vital to these preparatory efforts, the prosecution is forbidden to eavesdrop or plant agents to hear the councils of the defense. *Coplon v. United States,* 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952); *United States v. Andreadis,* 234 F.Supp. 341, 345 (E.D. N.Y.1964), collecting cases. It makes no difference whether the conversations unlawfully audited are solely between counsel and client and thus within the traditional, nonconstitutional privilege. The defendant has a right to prepare in secret, seeing and inviting those he deems loyal or those with whom he is willing to risk consultation. The prosecution's secret intrusion offends both the Fifth and Sixth Amendments. *Caldwell v. United States,* 92 U.S.App.D.C. 355, 205 F.2d 879 (1953), cert. denied 349 U.S. 930, 75 S.Ct. 773 [99 L.Ed. 1260] (1955).

Reference is made to *United States v. King,* 724 F.2d 253 (1st Cir.1984) circumspectfully and with some mild trepidation as it has been remanded to this court and a hearing has been held. A decision has not been rendered as the hearing is in the process of being transcribed.

Regardless the court in *U.S. v. King, supra,* states that it was "shocked by the thought that a law enforcement officer would, through an undercover agent, plant a recorder and thus endeavor to intrude into the conversation between an accused and his lawyer."

The Ninth Circuit in a recent case, *In Re Grand Jury Witness,* 695 F.2d 359, 362 (9th Cir.1982) stated,

As a general proposition, the client's ultimate motive for litigation or for retention of an attorney is privileged. *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 674–75 (5th Cir.1975); see 8 J. Wigmore, Evidence § 2313 (McNaughton Ed.1961). Confidential communications between attorney and client made in order to obtain legal assistance are likewise privileged. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), citing 8 J. Wigmore, Evidence § 2292. Accordingly, correspondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy ought to be protected. Similarly, bills, ledgers, statements, time records and the like which also reveal the nature of the services provided, such as researching particular areas of law, also should fall within the privilege. On the other hand, a simple invoice requesting payment for unspecified services rendered reveals nothing more than the amount of the fee and would not normally be privileged (unless the Baird exception is properly raised, as discussed supra.)

To reiterate, the plethora of cases the U.S. Attorney has cited are not consonant with the crucial factual situation present here.

Defendants have cases pending for trial in the state court, the same defendants are under investigation in this court.

It may appear picayune to the U.S. Attorney, but this court was privy to the trauma, and understandable emotional upset of Attorney Hodes on May 15, 1985 when he recited the facts of being served a subpoena in the evening at his home and in front of his family or the U.S. Attorney's flip comment about Attorney Raimo's statement concerning what the subpoenas may have done to his client's incipient practice.

The actions of the U.S. Attorney are without doubt harassing, show miniscule perception of the untoward results not only to those who practice criminal law, but those in the general practice of law as witness New Hampshire Bar Association as one of the intervenors.

The use of the phrase chilling effect upon the role of an attorney engaged in criminal defense work by being served a subpoena in circumstances such as this is mild. To permit it would have an arctic effect with the non-salutary purpose of freezing criminal defense attorneys into inanimate ice floes, bereft of the succor of constitutional safeguards.

The monetary problems such as attorneys hiring attorneys (as we have in this case) can be better spent on pertinent matters (a lawyer's time is his stock-in-trade). Also to be considered is the ever increasing specter of malpractice suits, the possible vindictiveness of prosecution counsel towards a successful, recalcitrant, obnoxious or obfuscating adversary, the jeopardizing of the attorney-client relationship, real or imaginary, the reluctance of capable attorneys to continue or to consider a full or partial career in the practice of criminal law and the further depletion in the paucity of capable trial lawyers because of a concatenation of events leading to abuse of process.

Motion to quash is granted.