### UNITED STATES of America

v.

### Richard KELLY, Appellant.

### No. 85-5974.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 18, 1986.

Decided May 9, 1986.

---

**50.** *Id.*

Stephen J. Wein with whom Anthony S. Battaglia was on brief, for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Roger M. Adelman, Asst. U.S. Attys., were on brief, for appellant.

Before WALD, SCALIA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Abscam defendant and former Congressman Richard Kelly appeals from the District Court's denial of his motion for a new trial based on newly-discovered evidence in the form of several affidavits by an FBI informant, James Davenport. Davenport's affidavits state that, in late July or August of 1980, he posed as a disgruntled former FBI agent, visited Congressman Kelly's office, discussed defense strategy with Kelly and his lawyer, and stole some documents relating to their trial strategy. We find that the District Court's failure to develop an evidentiary record before denying Kel-

ly's motion warrants a remand. Kelly's motion for bail pending appeal is denied.

## I. BACKGROUND

This is Congressman Kelly's third trip to this tribunal. Following conviction after a jury trial on bribery and other charges stemming from the FBI's Abscam investigation, the District Court dismissed the indictment against Kelly on due process grounds. This court subsequently reversed the dismissal and reinstated the jury verdict. *United States v. Kelly*, 707 F.2d 1460 (D.C.Cir.), *cert. denied*, 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 249 (1983) [hereinafter cited as *Kelly I*]. On remand, the District Court denied Kelly's alternative motions for judgment of acquittal or a new trial and sentenced him, consecutively, to imprisonment for six to eighteen months on the bribery count and three years of probation on the other counts. This court affirmed the conviction on direct appeal. *United States v. Kelly*, 748 F.2d 691 (D.C. Cir.1984) [hereinafter cited as *Kelly II*]. Several months later, Kelly filed a motion for a new trial based on the newly-discovered evidence involved in this appeal. That motion was denied from the bench without opinion on September 19, 1985. Kelly began serving his sentence on November 1, 1985.

Kelly's motion for a new trial was filed pursuant to Fed.R.Crim.P. 33 and included several affidavits from former FBI informant James Davenport. In October of 1984, while in prison, Davenport had sworn out an affidavit for a different proceeding which cited his involvement with the Kelly case as one among many events in an eighteen year life of crime. Oct. 3, 1984, Davenport Affidavit ("Aff."). After learning of the affidavit through a letter from a reporter, Kelly Aff. ¶ 14, Kelly contacted Davenport, who subsequently swore out several affidavits for use in Kelly's new trial motion which described a 1980 visit to Kelly's office, conversations with Kelly and his counsel about the forthcoming trial, and Davenport's theft of defense documents during the course of the visit. Davenport's

allegations are described in more detail below; the incident described in the affidavits may be briefly summarized as follows.

Davenport first became an FBI informant in a Florida drug investigation in the late 1970's. After being placed in the federal witness protection program, Davenport remained in touch with FBI agents Harold Copus and Russ Duger who, in the early part of 1980, introduced him to another FBI informant, Mel Weinberg. Oct. 3, 1984, Davenport Aff. at 3–15; Nov. 1984 Davenport Aff. ¶¶ 3–5; Feb. 20, 1985, Davenport Aff. at ¶¶ 4–9. Weinberg, a convicted con man, worked with the FBI to set up the Abscam operation and posed as the financial adviser for the fictitious Abdul Enterprises. *Kelly I*, 707 F.2d at 1462 & n. 4; *Kelly II*, 748 F.2d at 693.

During the spring of 1980, Davenport and Weinberg agreed on a scheme to infiltrate the defense camps of the Abscam defendants, in which Davenport would contact the Abscam defendants and, after identifying himself as a disgruntled ex-FBI informant, offer to testify on their behalf about how Abscam worked. Davenport would also steal information about defense strategies and turn it over to Weinberg, who would sell it to the FBI. The two men would split Weinberg's bonuses and Davenport's witness fees. Feb. 20, 1985, Davenport Aff. ¶ 21.

In accordance with this plan, Davenport travelled to Washington, D.C. in July-August 1980 and, using the name of James Driggers, offered his services to Congressman Kelly. Davenport succeeded in meeting with both Kelly and his attorney, Anthony Battaglia, spending most of the afternoon in Kelly's office discussing Kelly's trial defense strategy, and stealing copies of some legal papers including a witness list. These stolen documents were passed on to Weinberg. Feb. 20, 1985, Davenport Aff. ¶¶ 22–28; Dec. 5, 1984, Davenport Aff. ¶ 3; Kelly Aff. ¶¶ 7–13; Battaglia Aff. ¶¶ 6–11. Kelly and Battaglia subsequently decided not to use Davenport's services and forgot the incident until four years later when they were informed of Davenport's affidavit.

## II. MOTION FOR A NEW TRIAL

### A. *Standards Governing New Trial Motion*

■■■ The Federal Rules of Criminal Procedure allow a motion for a new trial based on newly-discovered evidence to be filed within two years after final judgment. Fed.R.Crim.P. 33. The grant or denial of such a motion is committed to the sound discretion of the trial judge and an appellate court will reverse only if the district court misapplied the law or abused its discretion. *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C.Cir.1982). In general, motions for a new trial based on newly-discovered evidence are governed by the five-part test of *Thompson v. United States*, 188 F.2d 652, 653 (D.C.Cir.1951). Under *Thompson*, a new trial will be granted only when five conditions are met:

> (1) [T]he evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

*Mangieri*, 694 F.2d at 1285 (quoting *Thompson*, 188 F.2d at 653). The government contends that Kelly has failed to meet the last three elements of the *Thompson* test.

The *Thompson* test does not, however, govern motions for a new trial when the newly-discovered evidence indicates that the original trial was marred by a sixth amendment or *Brady* violation. In the *Brady* context, the Supreme Court has substituted a test focusing primarily on the materiality of the undisclosed evidence, with a "reasonable probability" of acquittal as an essential element of materiality. *See infra* at 135. In the sixth amendment context, the Court has refused to apply traditional standards governing new trial

motions because "[t]he high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). In assessing whether a new trial motion adequately alleges a sixth amendment violation, this court has looked not to the *Thompson* standards but to whether the motion has "set forth evidence upon which the elements of a constitutional[ ] [violation] might properly be found." *United States v. Pinkney*, 543 F.2d 908, 916 (D.C.Cir.1976).[1] One such element, in the sixth amendment context, is prejudice. *See infra* at 136–137.

 Thus, we must evaluate Kelly's factual allegations to assess whether he has made enough of a showing to warrant a new trial or a hearing on his new trial motion. A motion for a new trial can ordinarily be decided on the basis of affidavits without an evidentiary hearing, *United States v. Kearney*, 682 F.2d 214, 219 (D.C. Cir.1982), and a district court's decision not to hold such a hearing may be reversed only for abuse of discretion, *United States v. Chagra*, 735 F.2d 870, 873 (5th Cir.1984). In the circumstances of this case, however, we find that the District Court's failure to develop any evidentiary record or to make any findings constituted such an abuse.

Kelly's motion for a new trial was based on newly-discovered evidence that, he alleged, demonstrated violations of his sixth amendment rights and his fifth amendment rights under *Brady v. Maryland*. His motions were supported by affidavits from himself, his attorney, and Davenport. He originally requested a hearing on the motion but withdrew the request after the government failed to contest the relevant factual issues by submitting counteraffidavits. The government did file an opposition to Kelly's motion denying that Davenport was acting as a federal agent and that prosecutors had seen the stolen documents, but without any accompanying affidavits to back up their denials. The District Court denied Kelly's motion from the bench without explanation.

The District Court abused its discretion by failing to hold an evidentiary hearing or to otherwise resolve the critical factual disputes raised by Davenport's affidavits and the government's negative responses to them. Kelly's affidavits portray his claims "materially and resolutely, and evinc[e], a capability of mounting a serious challenge." *United States v. Pinkney*, 543 F.2d 908, 916 (D.C.Cir.1976). In the absence of countervailing sworn evidence from the government, Kelly's allegations are—as explained below—sufficient to warrant further factual inquiry.

Although the District Court's failure to adequately develop a factual record is a sufficient ground for our remand, we are also concerned that the trial court may have erred by applying improper legal standards, at least regarding Kelly's sixth amendment claim. A district court's denial of a new trial motion may, of course, be overturned for " 'misapplication of the law.' " *Mangieri*, 694 F.2d at 1285 (citation omitted). The District Court gave no explanation for its denial of the motion, so we cannot be altogether certain of its legal grounds. But since neither party correctly argues the legal standards applicable to the sixth amendment claim in the briefs in our court, we are concerned that the trial court may have been misled on this complicated

---

**1.** Although *Strickland* and *Pinkney* involved ineffective assistance of counsel claims, their reasoning applies equally to sixth amendment cases involving government intrusions into the defense camp, since the effect of such intrusions is to deny the criminal defendant effective assistance of counsel. *Weatherford v. Bursey*, 429 U.S. 545, 554 n. 4, 97 S.Ct. 837, 843 n. 4, 51 L.Ed.2d 30 (1977). Because of the sixth amendment violations, one of the "essential elements of a presumptively accurate and fair proceeding," 104 S.Ct. at 2068, was missing from the first trial in both cases. Thus the Third Circuit has decided a new trial motion charging governmental intrusion into attorney-client confidences on the basis of whether a constitutional violation had been proven, rather than the ordinary test for a new trial. *United States v. Costanzo*, 740 F.2d 251 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985).

point. We have accordingly attempted to provide the court with some legal direction for the proceedings on remand.

### B. *The* Brady *Claim*

Kelly charges that the government violated his due process rights by failing to provide him with potentially exculpatory or impeaching information as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Kelly claims that the prosecution knew about Davenport's intrusion because Davenport had written a letter to the United States Attorney for the District of Columbia mentioning his visit to Congressman Kelly and the FBI had followed up on that letter by questioning Davenport about that incident. Kelly learned about the letter and the FBI agents' report of their interview with Davenport only as a result of his discovery request during the proceedings on his new trial motion.

In opposition to Kelly's *Brady* claim, government counsel made a series of unsworn representations in its briefs and in open court as to the "true state of affairs" regarding Davenport's letter and the subsequent FBI interview. Government counsel argued that they were not required to reveal information which was fabricated in the first place and which, in any event, they were not aware of at the time of Kelly's trial.[2] The government cannot, however, establish this or any other "true state of affairs" by mere assertions without affidavits. Whether the suppressed information was fabricated and whether the prosecution knew about it during the first trial are issues of fact for the District Court to decide.

 These factual disputes warrant a remand; Kelly's allegations are sufficiently meritorious to warrant evidentiary proceedings on his *Brady* claim. The affidavits and documentary evidence indicate that

Davenport wrote directly to the U.S. Attorney for the District of Columbia on October 10, 1980, stating that he had been in the witness protection program, had met with Congressman Kelly and his lawyer, and had important information about Kelly's Abscam case. At a subsequent FBI interview on November 5, the FBI learned that Davenport had been an FBI informant and questioned him about the substance of the meeting with Kelly. Yet neither the letter nor the FBI report was disclosed to Kelly despite the fact that each document existed during discovery prior to trial and each mentioned Kelly's name over a dozen times. Kelly argued in the new trial proceeding below that the letter and the FBI report would have led him to Davenport and also would have served as evidence of violations of his fourth and sixth amendment rights. New Trial Tr. 19, 28.

 Because the only argument presented to the District Court in response to these allegations was an unsworn denial of their truth, we find that the District Court's refusal to entertain the new trial motion amounted to an abuse of discretion and the motion must be remanded to the trial court for further proceedings. On remand, the usual standards for a new trial are not controlling because "the fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial." *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). Instead, the District Court must determine whether the undisclosed evidence was "material" to Kelly's conviction. *Id.* at 108–13. The Supreme Court has recently held that undisclosed information is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the

---

**2.** Whether the government was correct as a matter of law in arguing that the prosecution must always know about *Brady* material in order to give rise to a governmental duty to disclose has not been settled in this circuit. *Cf. United States ex rel. Smith v. Fairman,* 769 F.2d 386, 391 (7th

Cir.1985) (prosecutor's ignorance of the existence of the undisclosed evidence does not always justify a failure to produce, "especially ... when the withheld evidence is under the control of a state instrumentality closely aligned with the prosecution, such as the police").

result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* — U.S. —, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985).[3] This determination of materiality is inevitably fact-bound and so is committed to the trial judge in the first instance.

## C. *The Sixth Amendment Claim*

Kelly contends that his sixth amendment rights were violated when Davenport, a government agent, invaded his defense strategy sessions and stole relevant and important documents.[4] He argues that the fact of the intrusion and theft alone prove a constitutional violation and entitle him to a new trial without any further showing that his first trial was prejudiced in any way by the incident. The government, on the other hand, argues that Kelly must establish the high degree of prejudice embodied in the *Thompson* new trial standard, which requires a defendant to establish that a new trial will probably produce an acquittal.

■ Both parties seem to have missed the legal mark as to the applicable legal standards. Kelly has overlooked the Supreme Court's decision in *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), and its circuit court progeny which clearly establish that some showing of prejudice is a necessary element of such a sixth amendment claim. Conversely, these cases instruct that Kelly's burden of showing prejudice to the

first trial may not be as great as the government makes it out.

Kelly argues that he need show *no prejudice* resulting from Davenport's trickery because the cases establish a *per se* rule that any invasion of the attorney-client relationship by a government informant constitutes a violation of the sixth amendment. He relies primarily on *Caldwell v. United States,* 205 F.2d 879 (D.C.Cir.1953), which found a sixth amendment violation where a federal agent, while posing as an assistant for the defense counsel, reported frequently to the prosecution on intimate matters of defense trial preparation and strategy. Kelly also cites *Coplon v. United States,* 191 F.2d 749 (D.C.Cir.1951), *cert. denied,* 324 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952), in which government agents listened in on telephone conversations between the defendant and her attorney. Neither case required prejudice to be shown in order to establish the sixth amendment violations. 205 F.2d at 881; 191 F.2d at 759. Kelly claims that these cases were cited approvingly in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) as establishing a *per se* rule obviating the need to show prejudice in cases involving invasion of defense deliberations. Finally, Kelly cites *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966), in which the Court summarily ordered a new trial because a federal agent had listened to a defendant's communications with his lawyer.

■ In *Weatherford v. Bursey,* however, the Court rejected Kelly's reading of

---

**3.** Prior to *Bagley,* the standard of materiality had varied with the specificity of the defendant's request for the material. Although the portion of the opinion in *Bagley* establishing the uniform "reasonable probability standard" was joined only by Justices Blackmun and O'Connor, Justice White's concurring opinion joined by Chief Justice Burger and Justice Rehnquist also cited the "reasonable probability" standard with approval. 105 S.Ct. at 3385. Appellate courts interpreting *Bagley* have accordingly held that, because a majority of the justices adopted it, the "reasonable probability" standard applies to all *Brady* requests. *United States v. Ben M. Hogan Co.,* 769 F.2d 1293, 1299 (8th Cir.1985); *Lindsey v. King,* 769 F.2d 1034, 1041 (5th Cir.

1985); *United States ex rel. Smith v. Fairman,* 769 F.2d 386, 393 (7th Cir.1985).

**4.** Kelly also asserts that his fourth amendment rights were violated by Davenport's theft of these documents. The usual remedy for illegal searches and seizures, however, is exclusion at trial, *United States v. Morrison,* 449 U.S. 361, 366, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981), and Kelly has not alleged that any of the stolen evidence was directly or indirectly used at trial. We therefore review the allegedly stolen documents solely in the context of Kelly's sixth amendment allegation.

*Black* and *Hoffa* as creating a *per se* rule of presumed prejudice from any governmental intrusion. Bypassing the question of whether *Caldwell* and *Coplon* were good law, the Court specifically noted that *Hoffa* had only *assumed* their correctness for purposes of making a point in dicta. 429 U.S. at 550–54, 97 S.Ct. at 841–43. Critically, *Weatherford* went on to make it clear that some prejudice must be shown as an element of a sixth amendment violation. Contrary to the government's position, however, this showing need not rise to the level of proving that a new trial would more likely than not produce an acquittal. *See supra* at 134 n. 1. Instead, *Weatherford* and the appellate cases interpreting it have assessed several factors in determining whether a criminal defendant whose attorney-client deliberations have been ruptured by a covert government agent has shown the prejudice necessary to make out a sixth amendment violation. From the Supreme Court's discussion of what the defendant in *Weatherford* had *not* shown, the lower courts have elicited four so-called *Weatherford* factors to consider in determining whether a sixth amendment violation has been established: (1) was evidence used at trial produced directly or indirectly by the intrusion; (2) was the intrusion by the government intentional; (3) did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion; and (4) were the overheard conversations and other information used in any other way to the substantial detriment of the defendant? *Weatherford*, 429 U.S. at 554,

557, 97 S.Ct. at 843, 844; *United States v. Steele*, 727 F.2d 580, 585 (6th Cir.), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984); *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir.1981).

While the lower courts are in agreement that these are the factors to be evaluated to establish the requisite prejudice, they are far from unanimous on the crucial question of what combination of these factors is necessary to make out a sixth amendment violation.[5] This court has yet to enter the fray. *See United States v. Kember*, 648 F.2d 1354 (D.C.Cir.1980). In the absence of a concrete factual setting, we decline to do so today.

While we cannot specify with certainty the quantum of prejudice Kelly must establish under *Weatherford*, however, we are confident that he has made enough of a factual showing to merit further evidentiary development. Kelly has made no allegations under the first *Weatherford* factor as to use of tainted evidence, in part because he does not know what documents were taken by Davenport. Davenport's affidavits do, however, make sufficient allegations to warrant additional evidentiary development under the second and third *Weatherford* factors—intentional intrusion and disclosure of confidential information about defense strategy to the prosecution.

Davenport alleged that he was working as an FBI informant when he was introduced to FBI informant Weinberg through FBI agent Harold Copus in order for Weinberg to teach him "the ends and outs of

**5.** The Third Circuit is the only court to clearly hold that a sixth amendment violation is established by a showing under any one of the factors. *United States v. Costanzo*, 740 F.2d 251, 254–55 (3d Cir.1984). Two other circuits have evaluated the Weatherford factors *seriatim*, implying but not holding that each factor alone can establish a constitutional violation. *Clutchette v. Rushen*, 770 F.2d 1469, 1471–72 (9th Cir.1985); *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir.1981). Other courts have relied on various combinations of the factors. Two circuits have indicated that an intentional intrusion alone does not establish a violation, unless there is communication of confidential information or some other form of prejudice.

*United States v. Singer*, 785 F.2d 228, 234 (8th Cir.1986); *United States v. Steele*, 727 F.2d 580, 586 (6th Cir.1984). One circuit has held that when the intrusion is unintentional or intentional but justified a defendant must show both communication of confidential information and resulting prejudice. *United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir.1985). Finally, one circuit has held that a defendant must show prejudice when the intrusion is unjustified, but that once the defendant has shown communication of confidential information to the prosecution the burden shifts to the government to show a lack of prejudice. *United States v. Mastroianni*, 749 F.2d 900, 907–08 (1st Cir.1984).

sting operations." Feb. 20, 1985, Davenport Aff. ¶¶ 6–9. Weinberg and he developed a plan "to infiltrate the defense teams of the ABSCAM defendants." *Id.* at ¶ 21. Davenport implemented this plan by visiting Congressman Kelly's office. *Id.* at ¶¶ 22–28. Thus, Davenport's affidavits make adequate allegations under the second *Weatherford* factor—he and Weinberg were government informants who assumed for themselves the task of "learn[ing] what [they] could about the defendant's defense plans ... and acted accordingly." *Weatherford,* 429 U.S. at 557, 97 S.Ct. at 844. While the government has represented that Davenport was not, in fact, an FBI informant at this time, it has produced no affidavits from FBI agent Copus or informant Weinberg on which the District Court could have relied to make the necessary finding.

Davenport also alleged that he stole copies of legal papers from Kelly's attorney, including a witness list. Feb. 20, 1985, Davenport Aff. ¶ 28. ˙ Kelly had filed the witness list with the District Court for *in camera* inspection with a motion for a change of venue. The list named all of the witnesses Kelly planned to call along with brief summaries of their proposed testimony. Battaglia Aff. ¶ 11; Motion for Change of Venue, *attached to* Motion for a New Trial. Davenport passed the stolen documents along to Weinberg, but never found out what Weinberg did with them. Feb. 20, 1985, Davenport Aff. ¶ 28. Later in 1980, while Davenport was in jail, he noticed that Kelly's trial was going on and wrote to the United States Attorney for the District of Columbia, informing him that he had met with Congressman Kelly and his lawyer to discuss Kelly's Abscam case. Oct. 3, 1984, Davenport Aff. at 33; Letter, Appendix B to Opposition to Defendant Kelly's Motion for a New Trial. In re-

sponse to that letter, FBI agents interviewed Davenport on November 5, 1980, about his visit to Kelly's office and his allegation that one of Kelly's aides had access to confidential prosecution documents. Oct. 3, 1984, Davenport Aff. at 33; FBI Report, Appendix C to Opposition to Defendant Kelly's Motion for a New Trial. While this evidence does not establish conclusively that the third *Weatherford* factor has been met—that the prosecution had seen the documents—such a showing would have been nearly impossible for Kelly to make. Davenport's letter to the U.S. Attorney about the incident and his efforts to trace the stolen, confidential documents as far as he could are enough to warrant a sworn response by the government, which is in a far better position to establish that no member of the prosecution team had ever seen the stolen documents.

█ Given Davenport's allegations, some kind of hearing or other evidentiary process was needed to resolve disputed facts. We therefore see no recourse but to remand Kelly's motion for a new trial to the District Court for further factual development and resolution. Whether the requisite evidence can be developed through affidavits or requires an in-court hearing remains in the sound discretion of the District Court. If Kelly demonstrates sufficient prejudice to establish a sixth amendment violation, the government may, of course, defeat the new trial motion by showing that the constitutional violation was harmless error. To do that, the government must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).[6]

---

6. Thus, the issue of prejudice arises in two distinct contexts in sixth amendment cases, as illustrated by the Supreme Court's recent opinion in *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). First, some type of prejudice is an element of the constitutional claim itself. Such prejudice need not, however, be "outcome determinative" or affect the result of the entire trial. The degree of

prejudice needed to establish a constitutional claim will vary with the type of sixth amendment violation. *Id.* at 1436.

In some cases, the court's inquiry will end once the constitutional violation is established. When constitutional errors "are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case," the error is deemed prejudicial in

### III. MOTION FOR BAIL PENDING APPEAL

Kelly sought a legal furlough from prison to appear on his own behalf at oral argument and also moved for release on bail pending appeal pursuant to 18 U.S.C. § 3143(b) (Supp.II 1984). By order dated January 30, 1986, this panel denied the motion for a furlough and deferred consideration of the motion for bail pending appeal. Following oral argument, Kelly renewed his request for bail pending appeal and requested expedited consideration of his motion.

▆ Apart from the fact that Kelly's appeal has now been heard and decided, Kelly's bail motion fails because the Bail Reform Act of 1984 does not provide for bail pending appeal of the denial of a new trial motion made pursuant to Fed.R. Crim.P. 33. The Act applies only to "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari." 18 U.S.C. § 3143(b) (Supp. II 1984). Kelly's motion is not part of a direct appeal but a new trial motion based on newly-discovered evidence and § 3143(b) does not apply to an appeal from the denial of such a motion. *See United States v. Dansker,* 561 F.2d 485, 486–87 (3d Cir.1977) (en banc) (previous bail act does not govern bail pending appeal of denial of new trial motion); *Cherek v. United States,* 767 F.2d 335, 337 (7th Cir. 1985) (Bail Reform Act does not apply to convicted defendants seeking postconviction relief).

▆ Criminal defendants who have exhausted their direct appeals and are serving sentences may seek release while litigating new trial motions based on newly-discovered evidence via a motion under 28 U.S.C. § 2255 (1982). *Dansker,* 561 F.2d at 486–87. In a § 2255 proceeding, "the court's jurisdiction to order release as a final disposition of the action includes an inherent power to grant relief pendente

lite, to grant bail or release, pending determination of the merits." *Baker v. Sard,* 420 F.2d 1342, 1343 (D.C.Cir.1969); *see also Guerra v. Meese,* 786 F.2d 414, 417 (D.C.Cir. 1986). A release request in such proceedings will, however, "ordinarily ... be measured against a heightened standard requiring a showing of exceptional circumstances." *Baker v. Sard,* 420 F.2d at 1343; *see Cherek,* 767 F.2d at 337 (the power to grant bail pending resolution of a § 2255 proceeding is to be exercised very sparingly).

Because Kelly has not filed a § 2255 motion and because § 3143(b) of the Bail Reform Act is inapplicable to an appeal from the denial of Kelly's new trial motion, neither this court nor the District Court presently has the authority to release Kelly on bail. His motion for bail pending appeal is accordingly denied.

### IV. CONCLUSION

▆ The District Court's failure to develop an evidentiary record and resolve crucial factual disputes renders its denial of Kelly's new trial motion an abuse of discretion. Factual findings are particularly important where, as here, the governmental misconduct charged is extraneous to the trial and so is not documented in the trial record. *See United States v. Chagra,* 735 F.2d 870, 874 (5th Cir.1984); *United States v. Pinkney,* 543 F.2d 908, 915 (D.C.Cir. 1976). Thus the court in *United States v. Disston,* 582 F.2d 1108, 1110 (7th Cir.1978), held that a hearing was required on a new trial motion which, like Kelly's, alleged that an intrusion by a government informant into attorney-client meetings violated the sixth amendment. When facially adequate allegations have been made and critical information is more easily available to the government, an appellate court may order further factual inquiry when "the prosecution without any apparent reason has declined to produce corroborating evidence

every case. *Id.* at 1437. In most cases, however, sixth amendment violations will still be subject to *Chapman* harmless-error analysis. *Id.* at 1438. Thus, the prejudice factor will enter

the analysis a second time, but this time with the burden on the government to prove, beyond a reasonable doubt, that the constitutional violation was *not* outcome determinative.

which the record shows might have been offered." *Hamilton v. United States*, 140 F.2d 679, 681 (D.C.Cir.1944).

The District Court's denial of Kelly's motion for a new trial is accordingly reversed and remanded for further proceedings in accordance with this opinion. Kelly's motion for bail pending appeal is denied.

*So ordered.*