896 F.2d 1369
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel H. KNIGHT, Defendant-Appellant.
 No. 89-1478.
 United States Court of Appeals, Sixth Circuit.
 March 1, 1990.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and ROBERT HOLMES BELL, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant-appellant Daniel H. Knight appeals his conviction and sentence for income tax evasion. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 Knight was indicted by the grand jury for the Eastern District of Michigan on November 30, 1988, on three counts of tax evasion, in violation of 26 U.S.C. Sec. 7201. The indictment alleged that Knight willfully evaded federal income taxes by falsely claiming exemption from federal income tax withholding and by failing to file tax returns for 1984, 1985, and 1986.
 
 
 3
 Knight worked at Dow Chemical Co. in Midland, Michigan, until he retired in 1986. Various records introduced at trial indicated that Knight filed state and federal income tax returns until 1984. For several years prior to 1984, Duane Gary prepared Knight's tax returns. Gary testified that in 1983, Knight informed him that he planned to claim to be exempt from federal income tax withholding and stop filing returns.
 
 
 4
 In 1984, 1985, and 1986, Knight filed W-4 forms with Dow that falsely claimed he was exempt from withholding because he owed no taxes in the previous year and did not expect to owe any for the current year. Knight did not file state or federal income tax returns during the three years in question.
 
 
 5
 Dow paid Knight approximately $28,000 in 1984 and $29,000 in 1985. It paid him approximately $19,000 in salary, $14,000 in a pension annuity and $2,000 in a stock disbursement in 1986. Because he claimed to be exempt from withholding, only a total of approximately $300 was withheld from his salary, pension and stock disbursements during the three years in question. IRS accountants testified that Knight was not eligible to be exempt from withholding for the three years in question, and that by filing his false W-4 forms and failing to file returns, he avoided paying more than $12,800 in federal income taxes.
 
 
 6
 Knight was indicted in November 1988 and first appeared before the magistrate on December 13, 1988. He stood mute as the magistrate explained the charges and possible penalties and appointed standby counsel. The magistrate released Knight on bond, but inadvertently failed to obtain his signature on any of the bond forms.
 
 
 7
 Knight first appeared before the district court on January 30, 1989, for a pretrial conference. Knight refused to identify himself to the district court, insisting that the burden was on the "injured party accuser" to identify the defendant. After the district court assured Knight that proving the identity of the defendant was part of the government's burden at trial, Knight demanded that the district court issue a writ of habeas corpus to produce the injured party accuser so that he could confront his accuser. Knight also insisted that the district court lacked jurisdiction over him because, among other reasons, the injured party accuser had failed to appear and accuse him. When the district court explained that the grand jury's indictment provided the court with jurisdiction and that defendants cannot challenge the sufficiency of indictments with habeas corpus petitions, Knight accused the district court of unlawfully suspending the writ of habeas corpus.
 
 
 8
 Knight refused "to confer jurisdiction on the court" by participating in what he believed were illegal proceedings. Thus, while he rejected the aid of standby counsel and expressly refused permission for the standby counsel to speak for him, he also refused to acknowledge that he was "representing" himself. The district court advised Knight that his objection to jurisdiction would be noted as a continuing objection. Regardless of what the district court said, however, Knight continually demanded that the district court issue a writ of habeas corpus to compel the injured party accuser to appear in open court.
 
 
 9
 At the conclusion of the pretrial hearing and after setting the trial date for February 14, 1989, the district court asked Knight to sign the bond forms. When Knight refused, the district court stated that if Knight would promise to appear for trial, he could leave on his own recognizance. The district court made this offer several times. When Knight refused to promise to appear, the district court ordered that he be detained until he promised to appear or until trial. Knight remained in jail until his trial two weeks later.
 
 
 10
 On the first day of trial, the district court noted several times in the record that Knight was proceeding by himself, and it repeatedly offered Knight the chance to confer with standby counsel. However, the district court never obtained from Knight an express waiver of counsel.
 
 
 11
 Despite his warnings that he would not do so, the district judge essentially walked Knight through the trial. As the proceedings unfolded, the district judge explained jury selection, opening statements, cross-examination, direct examination, and closing arguments. The district judge and the Assistant United States Attorney advised Knight on how and when to make a motion for acquittal, and how to submit proposed jury instructions and object to the government's proposed instructions. In addition, the district judge questioned the government regarding the admissibility of certain exhibits in evidence where Knight offered no objection.
 
 
 12
 Knight, however, maintained throughout that the trial was unlawful and the district court had unlawfully ignored his demands for a writ of habeas corpus to produce the injured party accuser. Knight did not participate in jury selection and did not make an opening statement. He cross-examined the government's witnesses, but only as to whether they were the injured party accuser, or if they knew the injured party accuser. When each witness denied knowing the injured party accuser, he objected to their testimony as inadmissible hearsay.
 
 
 13
 After the government rested, the district judge excused the jury, and then the judge and the Assistant United States Attorney explained motions for acquittal. When Knight did not offer a motion, the judge asked him if he wanted to call witnesses or testify himself. Knight responded, "Sir, because I am dumb in the law, and unlearned in the same, why are you not executing my demand for a writ of habeas corpus?"
 
 
 14
 Knight said that he intended to call two witnesses to testify to the illegality of his trial: the presiding judge and the Assistant United States Attorney. The district court ruled that neither would appear as witnesses in the trial.
 
 
 15
 Knight then called two other witnesses. One, an IRS agent, testified that he did not know the injured party accuser. Knight then objected to his testimony as hearsay. The district judge agreed to strike the agent's testimony. Knight then called Ruby Garren, a woman who had typed several of the documents Knight had filed with the district court on behalf of himself. He asked her to identify a document entitled "Motion for Order for a Writ of Habeas Corpus in the Alternative." When she attempted to read the motion, the government objected on grounds of relevancy. After reviewing the document, the district court sustained the objection. The following exchange then occurred:
 
 
 16
 KNIGHT: I totally object. Are you denying me the right to enter evidence on my behalf, sir?
 
 
 17
 THE COURT: I'm not denying you the right to enter any relevant evidence. I'm denying you the right to enter any irrelevant evidence.
 
 
 18
 All that [the motion] has to do with is claims you've been making concerning the Court's jurisdiction and your present custody. Those are not issues before the Court and jury at this time.
 
 
 19
 KNIGHT: I thoroughly object.
 
 
 20
 THE COURT: So, yes, I am denying your right to offer those particular documents in evidence because they have nothing to do with the issues.
 
 
 21
 KNIGHT: I totally and thoroughly object.
 
 
 22
 THE COURT: Fine, an objection is just as total and thorough if you just object. The fact it's total [and] thorough doesn't mean anything.
 
 
 23
 KNIGHT: Sir, these are part of the Court's records.
 
 
 24
 THE COURT: They are indeed. That's fine, but they have nothing to do with this trial. They are part of the Court record because you filed them, but they have nothing to do with the merits of the tax evasion charges against you.
 
 
 25
 KNIGHT: Then are you suspending the writ of habeas corpus here?
 
 
 26
 THE COURT: I told you I'm not going to comment on that further at this time. Do you have any questions concerning the merits of the trial that you wish to ask of this witness?
 
 
 27
 KNIGHT: Are you suspending or depriving me by not executing the demand I have had for the writ of habeas corpus?
 
 
 28
 THE COURT: Mr. Knight, this is a trial.
 
 
 29
 KNIGHT: I object.
 
 
 30
 THE COURT: I'm not going to let you turn it into a farce.
 
 
 31
 KNIGHT: I object, sir.
 
 
 32
 Tr., Vol. II. at 61-62.
 
 
 33
 The jury found Knight guilty of all three counts of tax evasion. The district court sentenced him to one-year terms of imprisonment on each count, to be served consecutively.
 
 
 34
 Knight is represented by counsel on appeal. Knight has also filed proposed findings of fact and conclusions of law with this court, in which he proposes that we reverse his conviction on the grounds that the district court lacked jurisdiction and it unlawfully suspended the writ of habeas corpus to prevent him from confronting the injured party accuser.
 
 
 35
 The principal issues on appeal are: (1) whether the district court erred in failing to conduct, sua sponte, a hearing into Knight's competency to stand trial; and (2) whether the district court erred in failing to obtain an express waiver of counsel from Knight.
 
 II.
 A.
 
 36
 Knight's competency to stand trial was never in question below, nor was an inquiry into his competency ever requested by Knight, his standby counsel, the government, or the district court.[1] Consequently, no competency hearing was ever conducted.
 
 
 37
 On appeal, Knight has the burden of demonstrating that "the evidence raises a 'bona fide doubt' as to [his] competence to stand trial." Pate v. Robinson, 383 U.S. 375, 385 (1966). Our review focuses on the evidence that was before the district court to determine "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." Williams v. Bordenkircher, 696 F.2d 464, 467 (6th Cir.), cert. denied, 461 U.S. 916 (1983) (quoting Pate v. Smith, 637 F.2d 1068, 1072 (6th Cir.1981)). This is not a de novo review of the evidence, but a review of the district court's judgment, based upon the evidence before it, to determine if the district court erred in failing to doubt that Knight had "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 386 U.S. 402 (1960) (per curiam).
 
 
 38
 Knight argues that his conduct at trial indicated that he is, or should have been, seen "to be a person who is likely to have serious mental problems, which should have been apparent to both the U.S. Attorney and the trial court." Appellant's Brief at 22. For support, he cites Hansford v. United States, 365 F.2d 920 (D.C.Cir.1966), a case that involved a narcotics addict who pleaded insanity as one of his defenses. The addict testified to having used narcotics at lunch during his trial. Knight asserts that his behavior was as bizarre as the addict's and, like the addict, he deserves a new trial. We do not agree with Knight's assessment of his behavior at trial.
 
 
 39
 The transcript of Knight's trial and his other appearances before the district court indicate that while his conduct was inappropriate, it did not demonstrate that he did not understand the proceedings against him, or that it had its origin in a mental condition that would have prevented him from having a rational and factual understanding of the proceedings against him. Rather, the transcript indicates that Knight knew and understood what the court was doing, but that according to his jurisprudential theories, the court lacked the authority to act.
 
 
 40
 In reaching this conclusion, we do not overlook the fact that those who observed Knight at trial--the district judge, the Assistant United States Attorney, and standby counsel--never questioned his competency nor requested a hearing on that matter. This is compelling evidence that Knight's conduct should not have given those who observed him reasonable cause to believe that a competency hearing was necessary. See United States v. Richardson, 586 F.2d 661, 667 (9th Cir.1978).
 
 B.
 
 41
 Knight next argues that he was deprived of his Sixth Amendment right to the assistance of counsel because the district court never obtained a valid waiver of that right. Knight concedes that the right to self-representation is a personal, constitutional right. See Faretta v. California, 422 U.S. 806, 834 (1975). However, he stresses that before a district court can allow a defendant to represent himself, it must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " Id. at 835 (quoting Adams v. United States, ex rel. McCann, 317 U.S. 269, 279 (1942)). Knight asserts that the district court's inquiry into his purported waiver was perfunctory and not sufficient to allow him to appreciate the dangers and disadvantages of self-representation.
 
 
 42
 We held in United States v. McDowell, 814 F.2d 245 (6th Cir.), cert. denied, 484 U.S. 980 (1987), that before a district court can allow a defendant to represent himself, it shall (1) enter in the record an express finding that the accused has made a knowing and voluntary waiver of counsel after (2) conducting an inquiry modeled after the Waiver of Counsel inquiry in 1 Bench Book for United States District Judges 1.02-2 (3d ed. 1986). The district court did not comply with the rule in McDowell, but we find this error was harmless, as it "did not contribute to the verdict obtained." United States v. Kelly, 790 F.2d 130, 138 (D.C.Cir.1986) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).
 
 
 43
 The government had an overwhelming case against Knight, including his false W-4 forms and testimony from his former tax preparer that he intended to file false exemption forms and stop filing federal income tax returns. In addition, one reason the district court did not obtain an express waiver of counsel from Knight was that he refused to "confer jurisdiction on the court" by acknowledging that he was in fact representing himself or taking part in the proceedings. The transcript demonstrates that quizzing Knight as McDowell directs would have been futile. The transcript also demonstrates that Knight did not want assistance from his standby counsel or to be represented by an appointed counsel. Moreover, we note that the district judge walked Knight through his trial and protected his rights at every turn. Given all of these circumstances, we find there is no reasonable possibility that Knight would have been acquitted if he had been represented by counsel, and, therefore, the district court's failure to follow McDowell was harmless. See United States v. Dawes, 874 F.2d 746, 749 (10th Cir.) (per curiam), cert. denied, 110 S.Ct. 284 (1989).
 
 
 44
 Knight next argues that he never made "an actual election" to represent himself. This is another way of restating his argument that the district court did not obtain a valid waiver of counsel. Knight never "elected" to represent himself because he wanted to avoid "conferring jurisdiction" upon the district court by participating in any proceedings in which he required "representation." He now argues that because he attempted to ignore the district court at his trial, his actions below were cloaked with an immunity that entitles him to a new trial in which he has another opportunity to participate. We reject this argument as meritless, and for the same reasons as above, we hold that in the circumstances of this case, the district court's failure to secure an express "election" to represent himself was harmless error.
 
 
 45
 Knight next argues that the district court should have found him incapable of presenting his own defense and forced appointed counsel upon him. We rejected both of these arguments in McDowell, and do so again in this case. Knight essentially argues that his self-representation was so lacking that it amounted to no representation at all. However, as we noted in McDowell, a defendant who chooses to represent himself cannot complain on appeal about the quality of his self-representation at trial. McDowell, 814 F.2d at 251. Moreover, nothing occurred in Knight's trial that would have justified curtailing his constitutional right to self-representation under Faretta and forcing appointed counsel upon him. See Faretta, 422 U.S. at 834-36.
 
 III.
 
 46
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The defendant, the government or the district court may request an examination of the defendant to determine his competency to stand trial, pursuant to 18 U.S.C. Sec. 4241(a)