**FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 22 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-35172 |
| Plaintiff-Appellee, | D.C. Nos. 4:16-cv-00224-BLW |
| v. | 4:01-cr-00196-BLW-1 |
| | District of Idaho, |
| JOHN ERNEST DADE, | Pocatello |
| Defendant-Appellant. | ORDER |

Before: BERZON and COLLINS, Circuit Judges, and CHOE-GROVES,[*] Judge.

Appellant John Ernest Dade ("Dade") moves for release on bail pending his appeal of the district court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255. Dade contends that three of his five counts of conviction impermissibly rely on 18 U.S.C. § 16(b), which contains a residual definition of "crime of violence" that is facially invalid under Supreme Court precedent made retroactively applicable on collateral review. *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018); *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016); *Johnson v. United States*, 135 S. Ct. 2551 (2015). We express no view of the merits of Dade's

---

[*] The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

appeal, which has not yet been argued. Even assuming *arguendo* that Dade has established a likelihood of success on appeal, he has not made the further showing required to warrant his release pending appeal. We therefore deny the motion.[1]

Under Rule 23-1 of this court, Dade's "detention or release" pending his appeal of the denial of his § 2255 motion is "governed by FRAP 23(b), (c) and (d)." NINTH CIR. R. 23-1. Because the denial of a § 2255 motion is "a decision not to release a prisoner," the operative rule is Rule 23(b), which states that, pending appeal, "the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court," may order that the prisoner be "detained in the custody from which release is sought," "detained in other appropriate custody," or "released on personal recognizance, with or without surety." FED. R. APP. P. 23(b). Rule 23(b) does not itself set forth any substantive criteria for determining detention or release, and our decision is instead governed by equitable considerations. *See United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1995) (citing, *inter alia*, *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers); *United States v. Kelly*, 790 F.2d 130, 139 (D.C. Cir. 1986)); *cf. Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (decision under Rule 23(c) whether to stay release pending government's appeal depends on general equitable considerations governing stays). Here, Dade has failed to make a sufficient showing that release

---

[1] Judge Berzon would grant the motion and has filed a dissent.

is warranted under the applicable equitable standards.[2]

As we explained in *Mett*, release pending appeal of the denial of a § 2255 motion is "reserved . . . for extraordinary cases." 41 F.3d at 1282 (internal quotation marks and citation omitted). This requires an appellant to make a "heightened" showing beyond what would be required to warrant release on a direct criminal appeal. *Kelly*, 790 F.2d at 139. In *Mett*, we said that the requisite showing would involve "'special circumstances or a high probability of success.'" 41 F.3d at 1282 (quoting *Land v. Deeds*, 878 F.2d 318, 318 (9th Cir. 1989)). To the extent that our use of the disjunctive in *Mett* and *Land* might be thought to suggest that a "high probability of success" might alone be sufficient to warrant release, we clarify that a likelihood of success is not enough. A contrary rule would be an unwarranted departure from traditional equitable standards, *see Hilton*, 481 U.S. at 776 (likelihood of success is merely one factor in determining release under Rule 23), and it would lead to the anomalous result that release

---

[2] We note that Dade failed to seek release pending appeal from the district court before filing his motion in this court. Although the text of Rule 23(b) does not itself require that relief first be sought in the district court, the equitable principles that govern such discretionary requests generally require that an applicant "start by making the request to the court or judge who rendered the decision under review." 16AA CHARLES WRIGHT, ARTHUR MILLER, EDWARD COOPER, & CATHERINE STRUVE, FEDERAL PRACTICE AND PROCEDURE § 3969 (4th ed. 2008); *see also Smith v. Caldwell*, 339 F. Supp. 215, 216 (S.D. Ga.) ("Requests for release pending appeal" in habeas cases "should ordinarily be filed first in the district court.") (citing *Baker v. Sard*, 420 F.2d 1342 (D.C. Cir. 1969)), *aff'd*, 458 F.2d 160 (5th Cir. 1972).

would be more easily obtained on collateral review than on direct appeal.  *Cf.* 18 U.S.C. § 3143(b) (release pending appeal requires both a substantial showing on the merits *and* a showing that the defendant is "not likely to flee or pose a danger to the safety of any other person or the community").  Moreover, both *Mett* and *Land* drew their articulation of the relevant release standards from Justice Douglas's in-chambers opinion in *Aronson*, which made clear that the prisoner must show that, "*in addition to there being substantial questions presented by the appeal*, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice."  85 S. Ct. at 5 (emphasis added).  Thus, in addition to showing a likelihood of success on the merits, Dade must make a further showing of exceptional circumstances that go beyond what would be required to justify his release if this were a direct appeal rather than a § 2255 collateral attack.

Dade has not made this showing.  Although the Bail Reform Act does not apply on collateral review, *see Mett*, 41 F.3d at 1282, it cannot be the case that a prisoner whose detention would be required under that Act pending direct appeal can obtain release pending appeal on collateral review.  We agree with the Seventh Circuit that, because the standards applicable to collateral review are stricter than on direct appeal, a federal defendant who would not be entitled to bail pending direct appeal under the terms of § 3143(b) is, for that reason alone, not entitled to

bail pending resolution of his or her § 2255 proceedings.  *Cherek v. United States*, 767 F.2d 335, 337–38 (7th Cir. 1985).[3]  Here, Dade is not eligible for release pending appeal under the standards set forth in § 3143(b).  That statute requires that, in addition to making a sufficient showing on the merits, a prisoner must also show "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."  *Id*.  Dade's motion makes no such showing, much less a clear and convincing one.  Moreover, the Government has stated that, if Dade prevails on this appeal, it intends to recharge and retry him, thereby underscoring the inappropriateness of releasing him while his § 2255 appeal remains pending.

Dade argues, and the dissent agrees, that this case involves the "special circumstance[]" of the COVID-19 pandemic and the risks to Dade if he contracts it in prison.  *See Land*, 878 F.2d at 318.  This is indeed a special circumstance, and it

---

[3] The dissent is mistaken in contending that *Cherek* is inconsistent with our decision in *Mett*.  Just as we concluded in *Mett*, the Seventh Circuit explicitly stated that "the statute governing bail pending appeal from a federal conviction, 18 U.S.C. § 3143(b), is inapplicable here."  767 F.2d at 337; *see also Mett*, 41 F.3d at 1282 ("The Bail Reform Act does not apply to federal prisoners seeking postconviction relief.").  But as *Cherek* explained, that does not mean that § 3143 is irrelevant: because § 3143 provides "a more favorable standard" than a defendant asserting a § 2255 motion is "entitled to," it follows that "a defendant who cannot bring himself within its terms is not entitled to bail" in connection with those § 2255 proceedings.  *Cherek*, 767 F.2d at 337.  *Mett* did not address this further question.

5

might warrant a change in the conditions of his confinement (including transfer to another facility) if those risks are not being adequately addressed. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (Government must not be deliberately indifferent to the medical needs of prisoners); *cf. also Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) ("claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard" (internal quotation marks and citation omitted)). But we do not have that issue before us in this motion. Instead, we have only Dade's request that, in light of the risks of COVID-19, he should be released from detention *entirely*. Without a showing that Dade at least satisfies § 3143(b)(1)(A)'s standards, he is not entitled to that relief. Had he met those standards, then Dade's asserted risks in prison would be a factor that we could consider in exercising our overall discretion under Rule 23. But whether or not he faces a risk from COVID-19 in prison has no bearing on whether he will be a danger to the community if released, and that is what counts under § 3143(b)(1)(A).

Because Dade's request for release would fail under § 3143(b) if this were a direct appeal, he can fare no better on an appeal in a collateral challenge under § 2255, where he must satisfy a more demanding standard. Accordingly, Dade's

6

motion for release on bail pending appeal under Rule 23(b) is **DENIED**.

*United States v. Dade*, No. 19-35172

BERZON, Circuit Judge, dissenting:

I respectfully dissent. A § 2255 petitioner is entitled to bail pending appeal under Federal Rule of Appellate Procedure 23 in "extraordinary cases involving special circumstances or a high probability of success." *See United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) (quoting *Land v. Deeds*, 878 F.2d 318, 318–19 (9th Cir.1989)). Bail pending appeal in this case is warranted because Dade has established both.[1]

The underlying crimes at issue on appeal—Idaho burglary, battery, and assault—are misdemeanors under Idaho law that were prosecuted as federal crimes of interstate domestic violence (and thus carried a greatly enhanced sentence) because Dade traveled from Utah to Idaho to commit them. Dade has served eighteen years of his twenty-eight-year sentence.

---

[1] Our case law phrases this test as disjunctive, but I agree with the majority that both a high probability of success *and* special circumstances are required to grant bail under Federal Rule of Appellate Procedure 23(b). *Mett* quotes *Land*, which in turn cites *Aronson v. May*, 85 S. Ct. 3, 5 (1964), as support for this test. *See Land*, 878 F.2d at 318–19. *Aronson* reasoned that "it is . . . necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice." 85 S. Ct. at 5. Other circuits have considered these requirements in the conjunctive. *See, e.g.*, *Anderson v. Napel*, No. 17-1740, 2017 WL 5895735 *1 (6th Cir. 2017) (citing *Aronson*, 85 S. Ct. at 5).

Based on a preliminary review of this case, Dade has a high probability of success on the merits under the standard in *United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017). The jury could have relied on Idaho burglary or battery as the basis for his convictions for interstate domestic violence under 18 U.S.C. § 2261A(2)(B)(i) and brandishing a firearm in relation to interstate domestic violence under 18 U.S.C. § 924(c). As the government recognizes, state burglary offenses in 2002 were determined to be crimes of violence based on the residual clause of the federal crime of violence definition, 18 U.S.C. § 16(b). As to harmlessness, as to which we rely on current law, *see Geozos*, 870 F.3d at 897, it is clear at least that burglary and battery are now not within the force clause categorically.

This case also involves special circumstances, namely the COVID-19 pandemic and Dade's particular vulnerability. The government recognizes that Dade's underlying medical condition—a history of respiratory issues—and advanced age put him in the high-risk category should he contract the virus. It asserts that the BOP has policies in place to ensure the safety of inmates, but those policies have been appallingly ineffective in FCI Lompoc where Dade is incarcerated. According to recent reports, *nearly seventy-five percent* of the inmates at FCI Lompoc have now tested positive for COVID. *See* https://www.bop.gov/coronavirus/ (reporting on May 11, 2020, 7:27 a.m. that 842

2

of 1,162 inmates have "confirmed active cases" of COVID-19 at FCI Lompoc).[2]

That BOP's official protocols have not worked—or not been implemented—at FCI Lompoc is not surprising. Dade describes conditions inconsistent with the BOP's announced new policies in response to the virus: "[H]e has not been isolated due to his vulnerabilities and instead is housed with hundreds of other individuals, sleeping approximately 26 inches apart in double bunk beds." *See* Emergency Motion, Dkt. 83 at 12. And inmates at FCI Lompoc are "given two handmade masks, [but] they are able to see through them, other inmates do not consistently wear their masks, and they have no ability to disinfect or clean them other than by washing them in the communal sinks and letting them air dry," Reply, Dkt. 94 at 5; *see also id.* at 4–6 (describing other conditions at FCI Lompoc). Dade also cites numerous news articles noting the particular risk to inmates, practical difficulties in effectuating BOP's protective policies, and BOP's overall ineffectiveness in controlling the spread of the virus. *Emergency Motion* at 10–13. So the risk to

---

[2] As of May 21, 2020, 2:50 p.m., the BOP website reports 939 total inmates at FCI Lompoc and 291 "confirmed active cases" of COVID-19. Aside from the apparent sizeable decrease in the total population, no explanation is apparent for this dramatic drop in the number of current cases since May 11. Notably, the BOP reports only "confirmed active cases"; it does not show a cumulative number of inmates who have been infected. So it is possible that many infected individuals have been transferred or released while the motion before us was pending, and others have recovered.

Dade both of contracting the virus if he remains at FCI Lompoc and of becoming extremely ill or dying is quite high.

I note with concern that as recently as April 30, 2020, the government assured us that the risk of COVID-19 infection at FCI Lompoc was being adequately mitigated by BOP's "aggressive steps to protect inmates' health [and] to limit the spread of COVID-19," *see* Response, Dkt. 90 at 16–21, such that Dade was at little risk of contracting the virus. Dade's own reports of the on-the-ground situation turned out to be exceedingly more accurate, disturbingly so.

I also note that the majority's conclusion that Dade must satisfy the requirements of the Bail Reform Act plainly violates this circuit's precedent. In *Mett*, we unequivocally rejected the application of 18 U.S.C. § 3143(b) to a motion for bail pending appeal on habeas. *See* 41 F.3d at 1282. "Appellants are collaterally attacking their sentences. The Bail Reform Act does not apply to federal prisoners seeking postconviction relief." *Id.* (citation omitted). "Instead, Fed. R. App. P. 23 governs the issue of the release or detention of a prisoner, state or federal, who is collaterally attacking his or her criminal conviction." *Id.* To the extent we should consider whether Dade poses a danger to the community as part of the equitable consideration of special circumstances, any danger Dade poses here can be adequately addressed by imposing restrictions on his release. Dade notes that he "is amenable to any restrictions the Court is inclined to order" on his release, "since

4

his primary concern is surviving to learn the resolution of his appeal." Reply, Dkt. 94 at 11. Whether Dade continues to pose a threat and what restrictions would be appropriate to mitigate that threat are questions of fact that the district court is better positioned than this panel to resolve.

I would grant bail pending appeal and order a limited remand to the district court to hold an immediate bond hearing. *See Rose v. Baker*, 17-15009, Dkt. 62 at *3–4 (9th Cir. April 9, 2020) (remanding the case "to the district court for the limited purpose of conducting a bond hearing to determine bond and other appropriate conditions for release"). Dade asserts that he has friends that will take him in so that he may shelter in place if released, but the district court would be better suited to test the truth of those assertions, the adequacy of the available housing options, and otherwise set bail conditions.